UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK LEGAL ASSISTANCE GROUP,

                              Plaintiff,


               -against-


THE SOCIAL SECURITY ADMINISTRATION,

                              Defendant.

---

**Civil Action No. 23 Civ. 9363**

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      Plaintiff New York Legal Assistance Group ("NYLAG") brings this action under

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to challenge two systemic violations

of FOIA by Defendant United States Social Security Administration ("SSA"): (1) SSA's pattern

and practice of denying fee waivers to FOIA requesters, and (2) SSA's failure to proactively

make its Program Operations Manual System ("POMS"), Emergency Messages ("EMs"),

Administrative Messages ("EMs") and indexes of each of these documents publicly available

online. NYLAG also challenges SSA's conduct with respect to two of its own FOIA requests.

2.      NYLAG is a leading civil services organization that provides free legal assistance

at 111 community offices to more than 90,000 New Yorkers experiencing poverty, many of

whom are Social Security, SSI, or SSDI beneficiaries. In the past three years, NYLAG has

assisted over 3,700 individuals with issues regarding their benefits administered by SSA.

NYLAG relies on access to SSA policies and records to provide low-income clients with

information on SSA's processes and counsel them on accessing the benefits they need to afford

food, health care, and housing.

3.      In this lawsuit, NYLAG challenges, first, SSA's pattern and practice of denying

fee waivers in violation of FOIA. In the past three fiscal years, SSA received 791 fee waiver

requests under FOIA. SSA denied virtually all the requests, granting only two—a denial rate of

99.7%. This rate is completely out of step with other federal agencies, which typically grant

FOIA fee waiver requests at rates more than *100 times* higher than SSA's rate. NYLAG seeks

injunctive relief to compel SSA's compliance with FOIA's fee waiver provision, 5 U.S.C.

§ 552(a)(4)(A), and SSA's implementing regulation, 20 C.F.R. § 402.185.

4.      Second, NYLAG challenges SSA's failure to make certain documents publicly

available online as required by FOIA. Specifically, NYLAG challenges SSA's failure to make

publicly available online: (1) the entirety of the Program Operations Manual System ("POMS"),

an administrative manual used by SSA staff to conduct SSA's daily business and a primary

source of instruction for SSA employees when processing claims for Social Security benefits; (2)

all EMs and AMs, which supplement the POMS as directions to SSA staff on how to conduct

SSA's business, often under certain, time-limited circumstances; and (3) an index of each of

these types of documents. Even though the FOIA statute requires SSA to make all of these

documents available to the public online, SSA has not done so. NYLAG seeks injunctive relief

to compel SSA's compliance with FOIA's proactive disclosure provisions, 5 U.S.C. § 552(a)(2),

and SSA's implementing regulations, 20 C.F.R. §§ 402.45(b), 402.50, 402.55.

5.      These two systemic failures of SSA to comply with FOIA are worse than the sum

of their parts. Because SSA does not comply with its proactive disclosure obligations, many

documents that should be automatically made public are, in fact, not. And, SSA does not even

make available an index of these documents, so that the public does not generally know what portions SSA is withholding. Although requesters, including nonprofit public interest organizations like NYLAG, could in theory seek the withheld portions of these documents via traditional FOIA requests, there are two practical obstacles to doing so: first, without an index, requesters cannot identify withheld portions by title or topic and, second, any fee waiver requests in connection with those requests are virtually certain to be denied. As a result of SSA's policies, nonprofit public interest organizations like NYLAG are, at best, required to wait months and pay SSA simply to obtain documents that the Agency is legally required to make available to the public. But the majority of the time, SSA keeps these key documents secret, and the public remains unaware of their existence at all.

6.       Finally, NYLAG also seeks to compel SSA to grant NYLAG fee waivers in connection with two FOIA Requests submitted by NYLAG, to which NYLAG is entitled, specifically, Request No. SSA-2023-006957 ("FOIA Request 1," Exhibit 1A), and Request No. SSA-2023-006956 ("FOIA Request 2," Exhibit 2A) (together, "NYLAG's FOIA Requests"), and to compel SSA to provide records responsive to NYLAG's FOIA Requests.

**Jurisdiction and Venue**

7.       This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331, because this is the district in which NYLAG has its principal place of business.

8.       Venue is proper in the Southern District of New York under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is the district in which NYLAG has its principal place of business.

**Parties**

9.     Plaintiff NYLAG is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code.

10.     Defendant SSA is federal agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 701. Defendant has possession and control of the requested records and is responsible for fulfilling NYLAG's FOIA Requests.

### Public Benefits Administered by SSA

11.     SSA administers benefits programs that provide crucial support to individuals with very low incomes, who often rely on these benefits for necessary expenses.

12.     SSA operates Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, which provides subsistence benefits for individuals with very low income, and who are also elderly or have significant disabilities. At the start of 2023, 7.4 million people across the country received payments from SSI. SSI beneficiaries depend on SSI benefits to cover their most basic needs for shelter, food, clothing, and medical care.

13.     SSA also operates Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, which provides benefits to disabled individuals who have paid into the Social Security system and their dependent family members. Although financial hardship is not required for eligibility, many recipients rely on Title II benefits to cover their basic needs.  In 2021, 9.2 million people across the country received SSDI benefits.

14.     SSI and SSDI overwhelmingly serve individuals who belong to groups that have faced systemic discrimination. For example, the majority of SSI recipients (6.4 million) are eligible on the basis of disability or blindness, as are all SSDI recipients. Child recipients of SSI are disproportionately Black relative to the general population. NYLAG serves recipients of SSA benefits who belong to groups that have faced systemic discrimination: over half of NYLAG

4

clients receiving benefits from SSA identify as Black, African, Latinx, or Hispanic; over one-quarter have a primary language other than English; and the vast majority identify as having a disability.

15.     SSA also operates Social Security Retirement and Survivors' Benefits under Title II of the Social Security Act, which provides benefits to nearly 60 million people across the country ages 62 and older. Approximately half of the American population aged 65 or older lives in households that receive at least half of their family income from these benefits and about one-quarter of these households receive at least 90 percent of their family income from these benefits.

16.     For many of these beneficiaries, legal assistance is essential to help them access the full benefits to which they are entitled, because, for example, SSA has deemed them to be initially ineligible for benefits, or has reduced or terminated benefits because of findings about ongoing eligibility. It is difficult for unrepresented individuals who believe SSA has made errors in their cases to understand SSA's labyrinthine rules and regulations, to marshal the necessary law, argument, and documentation to submit to SSA to support their arguments, and to navigate the lengthy and confusing appeal process without legal assistance.

17.     Without access to benefits, recipients face a host of devastating harms, including homelessness, hunger, and the loss of critical Medicaid coverage linked to SSI. Even counting income received from public benefits, approximately 80% of social security benefit recipients served by NYLAG have income below the federal poverty line.

## FOIA Fee Waivers

*Statutory and Regulatory Background*

18.     FOIA, 5 U.S.C § 552, governs the process by which the federal government must release or proactively disclose requested records to the public and whether the federal government can charge a fee for the production of those records.

19.     Any person may make a request for records pursuant to FOIA to any government agency. 5 U.S.C. § 552(a)(3)(A). An agency must respond to a party making a FOIA request within 20 working days. *Id.* § 552(a)(6)(A)(i). An agency may toll the 20-day period in "unusual circumstances" of agency need. *Id.* § 552(a)(6)(B)(i).

20.     FOIA also dictates the nature of the agency's response. The response must notify the requesting party of the agency's determination of which of the requested records it will release, which of the records it will withhold and why, as well as the requester's right to appeal the determination. 5 U.S.C. § 552(a)(6)(A)(i).

21.     Under FOIA, agencies "shall" produce documents at no charge to the requester, or at a reduced charge, if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

22.     An agency may not require a requester to pay fees in advance unless the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250. 5 U.S.C. § 552(a)(4)(A)(v).

23.     With some limited exceptions, an agency generally may not charge any fees if the agency fails to respond to a FOIA request within the statutory time limits. 5 U.S.C. § 552(a)(4)(A)(viii).

24.     FOIA requires each agency to promulgate regulations that establish procedures and guidelines for the waiver or reduction of fees. 5 U.S.C. § 552(a)(4)(A)(i). SSA's fee waiver regulations are found at 20 C.F.R. § 402.185.[1]

25.     SSA's regulation specifies that a disclosure is in the public interest if it "furthers the specific public interest of being likely to contribute significantly to public understanding of government operations or activities, regardless of any other public interest it may further." 20 C.F.R. § 402.185(b). In analyzing this requirement, SSA considers four factors:

(1) How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?

(2) Would disclosure of the records reveal any meaningful information about government operations or activities? Can one learn from these records anything about such operations that is not already public knowledge?

(3) Will the disclosure advance the understanding of the general public as distinguished from a narrow segment of interested persons? Under this factor we may consider whether the requester is in a position to contribute to public understanding. For example, we may consider whether the requester has such knowledge or expertise as may be necessary to understand the information, and whether the requester's intended use of the information would be likely to disseminate the information among the public. An unsupported claim to be doing research for a book or article does not demonstrate that likelihood, while such a claim by a representative of the news media is better evidence.

---

[1] On June 6, 2023, SSA issued a Notice of Proposed Rulemaking ("NPRM") related to its FOIA regulations. 88 FR 36980, https://www.federalregister.gov/documents/2023/06/06/2023-09824/availability-of-information-and-records-to-the-public. The NPRM stated that SSA intends to issue a rule that clarifies SSA's FOIA processes for the public through reorganization and streamlining of its FOIA regulations, revision of headlines, updates to office name changes, and increased plain language. The changes do not substantively impact the processes and standards by which SSA processes FOIA requests and FOIA fee waiver requests. SSA has stated that "the content of [§ 402.85, the proposed section governing fee waivers will] maintain[] much of the language found in our existing regulation," including "providing the procedure for requesting a fee waiver or reduction that is located in our existing regulation." *Id.*

> (4) Will the contribution to public understanding be a significant one? Will the public's understanding of the government's operations be substantially greater as a result of the disclosure?

*Id.* § 402.185(b)(1)-(4).[2]

26.     SSA's regulation further specifies the factors that SSA considers when

determining whether a disclosure is not primarily in the requester's commercial interest:

> (1) Would the disclosure further a commercial interest of the requester, or of someone on whose behalf the requester is acting? "Commercial interests" include interests relating to business, trade, and profit. Not only profit-making corporations have commercial interests - so do nonprofit corporations, individuals, unions, and other associations. The interest of a representative of the news media in using the information for news dissemination purposes will not be considered a commercial interest.
>
> (2) If disclosure would further a commercial interest of the requester, would that effect outweigh the advancement of the public interest defined in paragraph (b) of this section? Which effect is primary?

*Id.* § 402.185(c).

27.     SSA has instructed its staff to consider six factors when adjudicating FOIA fee

waiver requests. *See* POMS GN. 03311.005.[3] Notably, these six factors are not the same as the

six factors listed in the FOIA regulation, 20 C.F.R. § 402.185(b), (c).

28.     SSA's regulations state that if the requested disclosure furthers the public interest

and is not primarily in the requester's commercial interest, it "will normally waive the fees," but

---

[2] The NPRM, *see supra* n.1, proposes to move the regulation governing fee waivers to 20 C.F.R. § 402.85 and to revise this list of four factors into a list of three factors. Those proposed three factors are: (1) How the records pertain to the Federal Government's operations or activities; (2) Whether disclosure would reveal any meaningful information about Government operations or activities not already known to the public; and (3) Whether the contribution to public understanding would be significant.

[3] These factors are: "1. Whether it is probable that the information being requested will be disseminated to a large number of people."; "2. Whether the records being requested could actually be used to benefit the general public."; " 3. Whether the release of the records would result primarily in the requester's financial benefit."; "4. Whether release of the records would help indigents and others of very limited means for whom it would be a hardship if they were required to pay a fee."; "5. Whether the requester helped SSA reduce unnecessary costs to the government."; and "6. Whether the information has already been made available for inspection by any member of the public." POMS GN. 03311.005.

that in some cases, such as "when disclosure of some but not all of the requested records passes

the tests, SSA will only reduce the fees." *Id.* § 402.185(d).

29.    Section 1106(c) of the Social Security Act also addresses fees SSA may assess in

response to requests for information. That statute provides that SSA "may require the requester

to pay the full cost" if SSA determines that the request's purpose relates "to the administration of

an employee benefit plan" or "is made for any other purpose not directly related to the

administration of the program or programs under this chapter to which such information relates."

42 U.S.C. § 1306(c); *see also* 20 C.F.R. §§ 420.80, 420.170.

30.    It is not clear how SSA determines if a request is "directly related to the

administration of" Social Security Act programs under Section 1106(c). However, on

information and belief, SSA applies the same fee waiver standards to FOIA fee waiver requests

regardless of whether SSA determines that a request for information is covered by Section

1106(c).[4]

*Factual Background*

31.    NYLAG, like many other non-profit organizations serving individuals

experiencing poverty, regularly submits FOIA requests to further its work on behalf of that

population, including FOIA requests to SSA. NYLAG seeks disclosure of records responsive to

its FOIA requests to better inform and counsel thousands of New Yorkers, as well as other

advocates that serve that population. NYLAG relies heavily on FOIA fee waivers because its

requests are in the public interest, not in NYLAG's commercial interest, and concern the

---

[4] The NPRM, *see infra* fn. 1, proposes to make explicit that SSA "will consider waiver under this regulation whether the agency charges under the FOIA's fee schedule or section 1106(c) of the Social Security Act." 88 Fed. Reg. 36980, 36986.

operations and activities of the government; and because NYLAG is a nonprofit organization with severely constrained funds to support its work.

32.     NYLAG is regularly granted fee waivers in connection with its FOIA requests to federal agencies. In 2023 alone, for example, NYLAG has been granted FOIA fee waivers from the United States Department of Education, the United States Department of Veteran's Affairs, and the Executive Office for Immigration Review within the United States Department of Justice.

33.     NYLAG is harmed when it is denied a public interest fee waiver under FOIA, as NYLAG then faces the choice to either pay the requested fee or to not obtain the records that are critical to fulfilling its core mission of serving New Yorkers with low incomes, including those who rely on Social Security, SSI, or SSDI benefits. NYLAG's only other option is to incur the financial and resource costs of litigating its entitlement to obtain the fee waiver and the documents.

34.     SSA receives and processes thousands of FOIA requests each year.[5]

35.     SSA receives hundreds of FOIA fee waiver requests each year.

36.     SSA denies virtually all FOIA fee waiver requests.

37.     In fiscal year 2022, SSA received 332 FOIA fee waiver requests. Of these, SSA only granted one request (0.3%), and denied 331 requests (99.7%).

38.     In fiscal year 2021, SSA received 265 FOIA fee waiver requests. Of these, SSA only granted one request (0.4%) and denied 264 requests (99.6%).

---

[5] Statistics are taken from *Social Security Freedom of Information Act, Annual Report Fiscal Year 2022* ("*2022 SSA FOIA Annual Report*") Soc. Sec. Admin., https://www.ssa.gov/foia/annual_reports/2022/SSA%20FOIA%20Annual%20Report%20FY22%20Final.pdf; and 2022 FOIA Data Set, 2021 FOIA Data Set, and 2020 FOIA Data Set, found at *FOIA Data Set Downloads*, FOIA.gov (accessed July 7, 2023) https://www.foia.gov/foia-dataset-download.html.

39.     In fiscal year 2020, received 194 FOIA fee waiver requests. Of these, SSA granted zero requests (0.0%) and denied all 194 requests (100%).

40.     In total, this means that over the three year-period covering fiscal years 2020-2022, SSA only granted two FOIA fee waiver requests (0.3%) and denied 789 requests (99.7%).

41.     Other federal agencies grant FOIA fee waiver applications at rates much higher than SSA.

42.     For example, in fiscal year 2022:

   a)  The Department of Agriculture granted 1,068 of 1,090 FOIA fee waiver requests (98%).

   b)  The Department of Commerce granted 235 of 405 FOIA fee waiver requests (58%).

   c)  The Department of Education granted 369 of 470 FOIA fee waiver requests (78.5%).

   d)  The Equal Employment Opportunity Commission granted 142 of 142 FOIA fee waiver requests (100%).

   e)  The Department of Energy granted 93 of 135 FOIA fee waiver requests (69%).

   f)  The Department of Labor granted 239 of 404 FOIA fee waiver requests (59%).

   g)  The Department of the Interior granted 794 of 1051 FOIA fee waiver requests (75.6%).

   h)  The Department of Health and Human Services granted 230 of 595 FOIA fee waiver requests (38.7%).

   i)  The Department of Housing and Urban Development granted 44 of 74 FOIA fee waiver requests (59.5%).

   j)  The Department of Transportation granted 70 of 125 FOIA fee waiver requests (56.0%).

   k)  The Department of Veterans Affairs granted 68 of 185 FOIA fee waiver requests (36.8%).

43.     In 2022, each of these agencies granted FOIA fee waiver requests at a rate more than *100 times* higher than SSA's.

44.     On information and belief, SSA denies virtually all fee waiver requests with boilerplate denial language stating that the request has "fail[ed] to explain with reasonable

11

specificity how the disclosure of the information . . . requested will meet the [public interest] factors" that SSA considers under FOIA and its implementing regulation. This letter lacks any details individual to the request or requester.

45.     On average, SSA takes only 8 days to adjudicate a fee waiver request.

46.     Under "Is There a Fee for This Information?" on the section of SSA's website titled "How to Request Agency Records Under the FOIA," SSA states that it "charges an hourly rate" without any mention of the statutory right to seek a fee waiver.

47.     As of August 2023, SSA has implemented a new online portal for the submission of FOIA requests. When the requester clicks to select that they are applying for a fee waiver, a message pops up, appearing as below, stating: "foia.ssa.gov says The fee waiver request will be reviewed and you will be notified of the decision however when submitting this request you must be willing to pay the minimum willing amount of $100 or more. Therefore, willing amount is set to $100."



48.     Thus, SSA requires all requesters seeking fee waivers to state at the outset that they are willing to pay a "minimum willing amount" of $100 in order to submit their FOIA request. If the requester is not willing to state that they will pay the $100 minimum fee, then the requester cannot submit a FOIA request to SSA.

*Examples of Fee Waiver Denials*

49.     On March 6, 2023, NYLAG submitted a FOIA Request seeking a copy of a section of the Program Operations Manual System that is not available on SSA's website: POMS GN 02402.007. POMS GN 02402.007 outlines SSA's policies regarding Direct Express cards, which are prepaid debit cards on which Social Security, SSI, and SSDI recipients who do not have bank accounts typically receive their benefits. POMS GN 02402.007 includes SSA's policies for its handling of complaints on issues related to Direct Express cards—an issue that directly affects benefits recipients, including NYLAG's clients. The request was assigned FOIA Request No. 2023-005589.

50.     NYLAG sought a waiver of fees because disclosure of the requested information would be in the public interest and not for commercial use. Specifically, NYLAG explained that the Request would contribute to public understanding of the operations of the government, particularly SSA's treatment of recipient complaints regarding funds disbursed on Direct Express cards and procedures for benefits recipients using Direct Express cards.

51.     On March 27, 2023, NYLAG received a letter from SSA's Acting Freedom of Information Officer, Michelle L. Christ, denying NYLAG's fee waiver request on the grounds that NYLAG's Request "fail[ed] to explain with reasonable specificity how the disclosure of the information . . . requested will meet the [public interest] factors" that SSA considers under FOIA and its implementing regulation.

52.     Denials of two of NYLAG's other fee waiver requests, which are challenged in this lawsuit, are described in detail *infra*, ¶¶ 171, 181.

53.     Many other non-profit, public interest organizations who serve individuals receiving SSI and SSDI benefits have had their requests for fee waivers denied by SSA. Like NYLAG, many of these organizations overwhelmingly serve clients living in poverty and people

of color, immigrants, survivors of violence, women, and other groups who face systemic discrimination.

54.     For example, the National Consumer Law Center ("NCLC") is a non-profit, public interest organization that assists consumers, advocates, and public policymakers nationwide, especially on behalf of those living in poverty. On September 19, 2019, NCLC submitted a FOIA request to SSA seeking records related to SSA's use of LexisNexis data. The request was assigned FOIA Request No. SSA-2019-003822. NCLC sought a waiver of fees because disclosure of the requested information would be in the public interest and not for commercial use.

55.     On December 27, 2019, NCLC received a letter from SSA's Acting Freedom of Information Officer, Michelle L. Christ, denying NCLC's fee waiver request on the grounds that NCLC's request failed to establish how disclosure meets the fee waiver requirements that SSA considers under FOIA and its implementing regulation.

56.     As another example, Urban Justice Center ("UJC") is a non-profit, public interest organization that serves thousands of low-income New Yorkers each year, including domestic violence survivors, immigrants, people with mental health concerns, people impacted by incarceration, LGBTQ+ young people, and other vulnerable citizens. On September 26, 2022, UJC's Mental Health Project submitted a FOIA request to SSA seeking two sections of the POMS: PM 00233.005, Regional Office Consultative Examination Oversight Procedures, and PM 00233.900, Regional Office Guide for Evaluating Disability Determination Service Management of the Consultative Examination Process. The request was assigned FOIA Request No. SSA-2022-015022. UJC's Mental Health Project sought a waiver of fees because disclosure of the requested information would be in the public interest and not for commercial use.

57.     On October 20, 2022, UJC's Mental Health Project received a letter from SSA's Acting Freedom of Information Officer, Michelle L. Christ, denying SLLS's fee waiver request on the grounds that UJC's request "fail[ed] to explain with reasonable specificity how the disclosure of the information . . . requested will meet the [public interest] factors" that SSA considers under FOIA and its implementing regulation.

58.     UJC's Mental Health Project received a similar denial on May 4, 2023 in response to a different FOIA request (FOIA No. SSA-2023-007182).

59.     As another example, Community Legal Services ("CLS") is a non-profit, public interest organization that provides free civil legal assistance to low-income Philadelphians and assists clients when they face the threat of losing their homes, incomes, health care, and even their families. On March 2, 2023, CLS submitted a FOIA request to SSA seeking records pertaining to SSA's contracting with a private organization to perform examinations by non-treating physicians on SSA beneficiaries. The request was assigned FOIA Request No. SSA-2023-005568. CLS sought a waiver of fees because disclosure of the requested information would be in the public interest and not for commercial use.

60.     On March 20, 2023, CLS received a letter from SSA's Acting Freedom of Information Officer, Michelle L. Christ, denying CLS's fee waiver request on the grounds that CLS' request "fail[ed] to explain with reasonable specificity how the disclosure of the information . . . requested will meet the [public interest] factors" that SSA considers under FOIA and its implementing regulation.

61.     CLS received additional fee waiver denials in response to other FOIA requests on October 21, 2022 (FOIA No. SSA-2023-000457) and May 10, 2023 (FOIA No. SSA-2023-008570).

62.     As another example, Southern Louisiana Legal Services ("SLLS") is a non-profit, public interest organization that serves low-income Louisianans, including abused children, disaster survivors, domestic violence survivors, low-wage workers, seniors, veterans, and other vulnerable citizens. On April 18, 2023, SLLS submitted a FOIA request to SSA seeking the number of Title II and Title XVI claims where Disability Determination Services (DDS) ordered examinations by non-treating physicians. The request was assigned FOIA Request No. SSA-2023-007479. SLLS sought a waiver of fees because disclosure of the requested information would be in the public interest and not for commercial use.

63.     On April 21, 2023, SLLS received a letter from SSA's Acting Freedom of Information Officer, Michelle L. Christ, denying SLLS's fee waiver request on the grounds that SLLS's request "fail[ed] to explain with reasonable specificity how the disclosure of the information . . . requested will meet the [public interest] factors" that SSA considers under FOIA and its implementing regulation.

64.     Some non-profit, public interest organizations who serve low-income individuals receiving SSI and SSDI benefits have stopped seeking fee waivers in their FOIA requests to SSA, even when they would meet the statutory and regulatory criteria, because their fee waiver applications are virtually certain to be denied.

65.     For example, Justice in Aging ("JIA") is a non-profit, public interest organization that primarily serves low-income older adults, particularly adults of color; women; LGBTQ+ older adults; and others who face systemic discrimination. Between 2014 and 2020, JIA submitted approximately 12 FOIA requests with fee waivers; every single FOIA fee waiver request was denied. JIA thereafter stopped seeking fee waivers in its FOIA requests to SSA. JIA is thus forced to pay fees which should be waived in order to fulfill its core mission of serving

older adults with low incomes, including those who rely on Social Security, SSI, or SSDI benefits. For example, JIA paid nearly $200 in connection with its request for POMS section GN 00303.300, described *infra* ¶ 106.

66.     Some non-profit, public interest organizations who serve low-income individuals receiving SSI and SSDI benefits have limited the FOIA requests that they would otherwise make, even when records potentially available through FOIA would benefit their clients and when those requests would be eligible for fee waiver under statutory and regulatory criteria, because their fee waiver applications are virtually certain to be denied and, because of their nonprofit status and limited budgets, they cannot afford the fees that would be charged absent a waiver. The inability to obtain documents through FOIA has had a negative impact on the operation of these organizations and their clients.

67.     For example, CLS stated in public comments to SSA that "SSA's seemingly routine denial of fee waivers has had a chilling effect among CLS attorneys and advocates. CLS attorneys often try to seek data or information through non-FOIA vehicles because there is a perception that the FOIA process is fruitless and a waste of our limited time and resources." *See* Regulations.gov Docket Number SSA-2021-0049-0005.

68.     On information and belief, some non-profit, public interest organizations who serve low-income individuals receiving SSI and SSDI benefits have stopped making FOIA requests to SSA at all for the same reasons, having a negative impact on the operation of these organizations and their clients.

### *Proactive Disclosure*

*Statutory and Regulatory Background*

69.     FOIA establishes certain records that agencies must make proactively available of their own accord and not in response to a specific request. This obligation to proactively disclose records is *in addition to* an agency's obligation to respond to FOIA requests.

70.     Under FOIA, records that must be proactively disclosed include "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," 5 U.S.C. § 552(a)(2)(B), "administrative procedures and staff manuals that impact the public," *id.* § 552 (a)(2)(C), and "indexes providing identifying information for the public" as to these two categories, *id.* § 552(a)(2)(E).

71.     Agencies must make these records available "in an electronic format." *Id.* § 552(a)(2).[6]

72.     A record that would otherwise fall into the categories of records required to be proactively disclosed in 5 U.S.C. § 552(a)(2) does not need to be disclosed if it falls into one of the FOIA exemptions listed in 5 U.S.C. § 552(b), for example, that it is "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2), it is an "inter-agency or intra-agency memorandum[] or letter[] that would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), or certain "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7); if it falls into one of the FOIA exclusions listed in 5 U.S.C. § 552(c); or "[t]o the extent required to prevent a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(a)(2)(E).

73.     A generic determination that a document is "sensitive" is not a lawful basis for withholding a document pursuant to FOIA.

---

[6] The NPRM, *see supra* n.1, proposes to make explicit in SSA regulations that these documents must be in electronic format, as required by the FOIA statute. *See* 88 Fed. Reg. 36,999 (proposed 20 C.F.R. § 402.155). SSA's current regulations provide that these documents are available for inspection in SSA district, branch, and field offices. 20 C.F.R. §§ 402.50, 402.55.

74.     When an agency makes the determination to withhold documents that it would otherwise be required to proactively disclose, "the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in [5 U.S.C. § 552(b)] under which the deletion is made. If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made." 5 U.S.C. § 552(a)(2)(E).

75.     An agency may only "rel[y] on, use[], or cite[] as precedent" any document that is required to be affirmatively disclosed if that document has "been indexed" and made available to the public (or where the other party has actual and timely notice of the terms of the document). 5 U.S.C. § 552(a)(2)(E).

76.     SSA's regulations implement the proactive disclosure provisions of FOIA. 20 C.F.R. §§ 402.45(b), 402.50.

77.     SSA's own implementing regulations state that SSA must proactively disclose the POMS. *Id.* §§ 402.55(b)(1).

78.     SSA's own regulations also specify that SSA must proactively disclose indexes for all proactively disclosed materials. *Id.* §§ 402.45(b), 402.55(b)(4).

*Factual Background: The POMS*

79.     The Program Operations Manual System ("POMS") is the primary source of information used by SSA employees to process claims for Social Security benefits.

80.     The POMS contains policies that control virtually every aspect of the administration of benefits by SSA. For example, for SSI beneficiaries, the POMS sets forth detailed policies for eligibility (POMS SI 005), income limits (POMS SI 008), asset limits

(POMS SI 011), and how payments of too much or too little benefits are handled by the agency

(overpayments, POMS SI 022, and underpayments, POMS SI 021). Within each of these broad

categories, the POMS contains hundreds of specific policies that potentially impact an

individual's entitlement to and receipt of benefits.

81.    The POMS is a "statement[] of policy and interpretations which ha[s] been

adopted by the agency and [is] not published in the Federal Register," and/or an "administrative

staff manual[] and instructions to staff that affect a member of the public" within the meaning of

5 U.S.C. §§ 552(a)(2)(B), (C). Accordingly, SSA has an obligation under FOIA to proactively

disclose the POMS to the public.

82.    SSA does not proactively disclose the entire POMS to the public. Instead, SSA

only proactively discloses certain sections of the POMS to the public, and withholds the others.

83.    Pursuant to its affirmative disclosure obligations under FOIA and its

implementing regulations, SSA maintains a "FOIA Reading Room," including a section titled

"Proactive Disclosures," a section titled "Social Security Laws, Regulations, and Policies," and a

subsection called "Administrative Staff Manuals." *See FOIA Reading Room*, Soc. Sec. Admin.,

https://www.ssa.gov/foia/readingroom.html.

84.    SSA's FOIA Reading Room contains a link to the POMS homepage of its

website, https://secure.ssa.gov/apps10.

85.    The POMS page of SSA's website contains some sections of the POMS.

86.    SSA does not post on its website, or otherwise make publicly available in an

electronic format, many other sections of the POMS.[7]

---

[7] On information and belief, SSA likewise does not make many sections of the POMS available to the public in SSA offices, in contravention of its own regulations. On August 7, 2023, NYLAG staff visited an SSA Field Office and asked to publicly inspect certain sections of the POMS. The Field Office staff provided to NYLAG one section of

87.     For example, POMS section GN 02402.007, which was the subject of NYLAG's March 6, 2023 FOIA Request, *see supra* ¶ 49, is not posted on SSA's website or otherwise made publicly available in electronic format.

88.     SSA employees have access to all sections of the POMS, including sections that are not available to the public.

89.     SSA does not provide any justification to the public as to why it withholds numerous sections of the POMS from the public. In fact, SSA does not make public its justification for withholding any sections of the POMS.

90.     SSA has instructed its staff to "[w]ithhold" from the public "sensitive portions of" the POMS "under FOIA Exemption 2, which refers to matters that are 'related solely to the internal personnel rules and practices of the Agency.'" POMS GN 03360.040.

91.     If properly applied, FOIA Exemption 2 would be a lawful basis for withholding certain sections of the POMS from the public. However, there are at least three ways in which SSA's practice of withholding numerous sections of the POMS is unlawful.

92.     First, SSA withholds from the public many sections of the POMS that do not fall under FOIA Exemption 2 and are not subject to any FOIA exemptions or other lawful basis for withholding.

93.     SSA's Chief FOIA Officer has stated that "a large amount of" the POMS was "not really properly" withheld under FOIA. *See* 2010 Chief FOIA Officer Report, *available at* https://www.ssa.gov/foia/annualreports.html.

---

the POMS requested by NYLAG that is publicly available online, but denied NYLAG's request for copies of certain sections of the POMS that are not publicly available online.

94.     Second, on information and belief, if SSA has determined that any part of a section of the POMS should not be disclosed publicly, it withholds that section from public disclosure in full, rather than make it available with redactions.

95.     Under FOIA, if only a portion of a document is subject to a FOIA exemption or other basis for withholding, SSA is required to redact the part that it has determined should not be disclosed rather than withholding that document in full.

96.     Third, SSA does not make public any information at all regarding which sections of POMS are withheld from the public, at the point of the withholding or anywhere else.

97.     Under FOIA, SSA is required to make any withholding or deletions public and indicate the extent of those deletions.

98.     On information and belief, making available the extent of the deletions of the POMS would not harm any interest protected by the FOIA exemptions in 5 U.S.C. § 552(b).

99.     SSA recognizes that there is no basis under FOIA to withhold certain sections of the POMS. In fact, when individual requesters seek certain sections of the POMS that SSA has not posted publicly, SSA grants some of those requests and does disclose the sections, without full redaction.

100.    For example, SSA does not make POMS section GN 02402.007 publicly available. On March 6, 2023, NYLAG submitted a FOIA request to SSA seeking POMS section 02402.007, FOIA Request No. 2023-005589. *See supra* ¶ 49. On September 29, 2023, SSA granted NYLAG's request and provided a copy of POMS section GN 02402.007.

101.    POMS GN 02402.007 contains key policies that affect benefits recipients who receive their benefits on Direct Express prepaid debit cards, including, crucially, steps that SSA

staff can take to assist benefits recipients who have difficulty resolving problems with their Direct Express card with the issuing bank or who have experienced fraud on their card.

102.    The copy of POMS GN 02402.007 transmitted to NYLAG is labeled "SENSITIVE – NOT TO BE SHARED WITH THE PUBLIC."

103.    SSA redacted certain portions of POMS GN 02402.007, which SSA described as "internal office electronic mailboxes," pursuant to Exemption 2, and "information related to the agency's security practices, including internal web addresses," pursuant to Exemption 7(E).

104.    The redactions are extremely limited. Of the twenty-one pages of the document, less than two pages' worth of material in the aggregate was redacted, and thirteen pages of the document contain no redactions at all.

105.    The limited redactions show that—notwithstanding that SSA labeled the document "sensitive" and withheld it from its public POMS website—SSA has determined that the majority of POMS GN 02402.007 cannot be withheld under FOIA or on any other basis.

106.    As another example, SSA does not make POMS section GN 00303.300 publicly available. On January 26, 2022, JIA submitted a FOIA request to SSA seeking POMS section GN 00303.300, FOIA Request No. SSA-2022-004871. On August 31, 2022, SSA granted JIA's request and enclosed a copy of POMS section GN 00303.300 with limited redactions, indicating that SSA has determined that the majority of POMS section GN 00303.300 is not subject to any FOIA exemptions or other bases for withholding.

107.    Courts regularly rely on the POMS when adjudicating issues relating to benefits administered by SSA, and give "respect" to the POMS as the Agency's interpretation of its own regulations. *Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*,

537 U.S. 371, 385 (2003); *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003) ("While the POMS does not have the force of law, it can be persuasive.").

108.    Courts relying on the POMS often assume that it is available to the public. *Washington*, 537 U.S. at 385 (POMS is "publicly available"); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 857 (3d Cir. 2007) ("[A] publicly available version [of the POMS] is posted on the World Wide Web.").

109.    At times, SSA staff rely on withheld sections of the POMS when making determinations regarding individuals' benefits. *See, e.g.*, *Michael S. v. Comm'r of Soc. Sec.*, No. C21-5559-SKV, 2022 WL 4592038, at *5 (W.D. Wash. Sept. 30, 2022) ("The Court shares Plaintiff's concern that the Commissioner's citation to a non-public POMS provision in a brief suggests that this provision informed, to at least some degree, the Commissioner's decision-making process.").

110.    SSA field office staff regularly tell NYLAG staff they are relying on the POMS when making a determination regarding an individual client's benefits, and then, when asked, will not provide the applicable section of the POMS.

*Factual Background: The POMS Comprehensive Index*

111.    SSA maintains the POMS Comprehensive Index which is, on information and belief, an index of the POMS that lists all sections of the POMS. *See* POMS GN 03360.040.

112.    SSA employees have access to the POMS Comprehensive Index, even though it is not available to the public. *Id.*

113.    Neither SSA's FOIA Reading Room, nor any other part of SSA's website, contains the POMS Comprehensive Index or any index of the POMS.[8]

114.    While the POMS section of SSA's website has a table of contents, that table of contents only includes sections of the POMS that are posted on SSA's website. It does not include sections of the POMS that are not posted on SSA's website.

115.    For example, POMS section GN 02402.007, which is the subject of NYLAG's FOIA Request described *supra* ¶ 49, is not listed in the table of contents of the POMS on SSA's website.

116.    Likewise, POMS section GN 00303.300, described *supra* ¶ 106, is not listed in the table of contents of the POMS on SSA's website.

117.    And, POMS Sections PM 00233.005 and PM 00233.900, which were the subject of UJC's September 26, 2022 FOIA Request described *supra* ¶ 56, are not listed in the table of contents of the POMS on SSA's website. In fact, the table of contents on SSA's website does not even list *any* POMS beginning with PM, suggesting that an entire chapter of POMS sections is not made publicly available.

118.    On information and belief, sections of the POMS are sequentially numbered. It is thus possible to infer that certain sections of the POMS exist but are not available to the public. For example, POMS GN 02001 through GN 02006 and GN 02010 appear in the table of contents, but GN 02007, GN 02008, and GN 02009 do not. On information and belief, the missing numbers indicate sections of the POMS that are being withheld from the public.

---

[8] On information and belief, SSA likewise does not make the POMS Comprehensive Index available to the public in SSA offices. On August 7, 2023, NYLAG staff visited an SSA Field Office and asked to publicly inspect the POMS Comprehensive Index. The Field Office denied NYLAG's request.

119.     Non-profit, public interest organizations have only incidentally learned that some essential sections of the POMS exist, for example, when a withheld section of the POMS is cited by a publicly available section, or when an SSA staff member mentions the existence of a withheld section.

120.     For example, NYLAG learned of the existence of POMS section GN 02402.007, which is the subject of NYLAG's FOIA Request described *supra* ¶ 49, only because a NYLAG staff member was at a meeting in which a SSA employee described the existence of that section of the POMS and provided the POMS section number.

121.     As another example, JIA learned of the existence of POMS section GN 00303.300, *see supra* ¶ 106, because it is referred to in different sections of the POMS that *are* publicly available, such as section GN 00303.200, which states that dual citizens claiming continued U.S. nationality may submit as evidence documents listed in GN 00303.300, *available at* https://secure.ssa.gov/poms.nsf/lnx/0200303200.

*Factual Background: Emergency Messages and Administrative Messages*

122.     Emergency Messages ("EMs") are instructions to SSA staff on a variety of topics, including how to process claims for Social Security, SSI, and SSDI benefits, that are typically intended to apply during certain time-limited circumstances.

123.     On information and belief, EMs are considered to bind SSA in a manner equivalent to that of instructions contained in the POMS.

124.     On information and belief, SSA has relied heavily on EMs to issue policy changes that affect benefits recipients since the start of the COVID-19 pandemic.

125.     For example, EM-21050 and EM-20014 direct SSA staff how to treat certain types of financial assistance provided in connection with the COVID-19 pandemic in connection

with income and resource (asset) limits for SSI recipients. As another example, EM-20037 directed SSA to issue waivers of certain overpayments incurred at the start of the pandemic.

126.    Emergency Messages are "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," and/or "administrative staff manuals and instructions to staff that affect a member of the public" within the meaning of 5 U.S.C. § 552(a)(2)(B), (C).

127.    SSA's FOIA Reading Room, https://www.ssa.gov/foia/readingroom.html, contains a link to the POMS homepage of its website, https://secure.ssa.gov/apps10, which in turn contains a link to a page on EMs, https://secure.ssa.gov/apps10/reference.nsf/instructiontypecode!openview&restricttocategory=EM.

128.    SSA makes some EMs publicly available on the POMS section of its website, but does not make many other EMs available in electronic format on its website or elsewhere.

129.    On information and belief, SSA withholds EMs from the public when it has designated those messages as "sensitive."

130.    On information and belief, many withheld EMs are not subject to any FOIA exemptions or other legal basis that would justify withholding.

131.    SSA removes from its website EMs that have, by their terms, expired.

132.    Information included in EMs is sometimes subsequently incorporated into the POMS, making some EMs substantively duplicative of the POMS. However, sometimes information included in EMs is not subsequently incorporated into the POMS, rendering the EM the only source of the applicable policy.

133.    EMs that have "expired" can still be relevant to benefits recipients and advocates. For example, SSA periodically completes a redetermination of all SSI recipients' accounts,

including a retrospective review to determine eligibility for SSI benefits received in the past 24 months, so EMs that "expired" up to two years earlier may still be relevant when determining the correct amount of benefits during that two-year period.

134.    As a specific example, EM-21068 governs SSA's procedures for reopening SSI claims that were closed due to rules about how COVID-19 disaster assistance was counted, since those rules were later revised to generally be more favorable to recipients. This EM is no longer publicly available, but it provides important information that still may affect SSI beneficiaries, who may be entitled to obtain retroactive benefits for months for which they should have been eligible after their cases were wrongfully closed at the start of the pandemic.

135.    As another example, EM-20040 is not currently posted on SSA's website or otherwise made publicly available in electronic format. This EM covers circumstances under which a benefits recipient could seek continuation of their benefits (Statutory Benefit Continuation) during the pandemic and additional pandemic circumstances that SSA should consider as good cause for making a late request.

136.    SSA does not post on its website, or otherwise make publicly available, any index of EMs.

137.    On information and belief, EMs are sequentially numbered, so that it is possible to infer certain EMs exist but are not available to the public. For example, EMs EM-23035, EM-23036, EM-23037, EM-23041, EM-23045, EM-23047, and EM-23049 appear on the EM portion of the POMS website, but EMs EM-23038 through EM-23-040, EMs EM-23042 through EM-23044, EM-23046, and EM-23048 do not.

138.    On information and belief, SSA employees have access to a complete index of EMs, even though such an index is not available to the public.

28

139.    Administrative Messages ("AMs") are instructions to SSA staff on a variety of topics, including how to process claims for Social Security benefits.

140.    For example, AM-12048 sets forth guidance to adjudicators about evaluating disability based on schizophrenia and AM-17049 sets forth this guidance for disability based on post-traumatic stress disorder.

141.    Administrative Messages are "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," and/or "administrative staff manuals and instructions to staff that affect a member of the public" within the meaning of 5 U.S.C. §§ 552(a)(2)(B), (C).

142.    SSA does not make AMs publicly available in electronic format on its website or elsewhere.

143.    On information and belief, many withheld AMs are not subject to any FOIA exemptions or other legal basis that would justify withholding.

144.    SSA does not post on its website, or otherwise make publicly available, any index of AMs.

145.    On information and belief, SSA employees have access to an index of AMs, even though such an index is not available to the public.

146.    Non-profit, public interest organizations have only incidentally learned that some essential EMs or AMs exist, for example, when a withheld EM or AM is cited by a publicly available one, or when an SSA staff member mentions the existence of a withheld one.

147.    Because essential EMs and AMs are not publicly disclosed despite the statutory and regulatory provisions, non-profit, public interest organizations regularly request individual EMs and AMs from SSA via FOIA requests once they are made aware of them.

148.    SSA is systemically failing to proactively disclose EMs and AMs that are not subject to any lawful basis for withholding in full. SSA grants FOIA requests for EMs and AMs made by individual requesters and discloses EMs and AMs to these requesters pursuant to those requests, without full redaction, and without withholding under any FOIA exemptions or pursuant to any other basis.

149.    For example, the National Organization of Social Security Claimants' Representatives ("NOSSCR") obtained via FOIA AM-17049 on post-traumatic stress disorder, *see supra* ¶ 140. AM-17049 was produced with no redactions, indicating that SSA has determined that most or all of the substance of this AM was not subject to any FOIA exemptions or other bases for withholding.

150.    As another example, JIA regularly requests EMs and AMs via FOIA requests, including a request for three EMs in January 2018, a request for one AM in February 2020, a request for one EM in August 2020. SSA granted JIA's requests and enclosed a copy of the requested EMs and AMs with limited redactions—and some with no redactions—indicating that SSA has determined that most or all of the substance of these EMs and AMs was not subject to any FOIA exemptions or other bases for withholding.

151.    On February 4, 2021, JIA submitted a FOIA request to SSA seeking all EMs issued by SSA during the calendar year 2020 and an index of these EMs. SSA ultimately granted JIA's request and posted all EMs issued during the calendar year 2020 publicly online as well as releasing the records to JIA. These EMs were released with limited redactions, indicating that SSA has determined that much of the substance of the 2020 EMs that had been previously withheld were not subject to any FOIA exemptions or other bases for withholding. Even though SSA affirmatively made all EMs issued in 2020 available to the public online, it has not

continued to do so after 2020. In 2021 and 2022, JIA submitted additional FOIA requests for newly-released EMs that were not made publicly available online; SSA ultimately granted JIA's requests and posted them publicly online, indicating that SSA has determined that much of the substance of these EMs that had been previously withheld were not subject to any FOIA exemptions or other bases for withholding. Yet SSA continues to withhold EMs from the public.

*Harm to NYLAG and the Public*

152.    NYLAG relies on access to the POMS, EMs, and AMs to inform individuals about their rights and assist them with accessing Social Security, SSI, or SSDI benefits.

153.    NYLAG is harmed when it does not have access to sections of the POMS, EMs, and AMs that should be made publicly available because NYLAG must choose either to dedicate time and staff labor toward submitting a FOIA request, or to go without records essential to its core mission.

154.    NYLAG is harmed when it does not have access to an index of the POMS, EMs, or AMs that should be made publicly available because NYLAG is unaware of what sections may be relevant to an individual's entitlement to benefits. Further, NYLAG cannot even seek most withheld sections of the POMS, EMs, or AMs via FOIA requests, because NYLAG does not even know what sections exist.

155.    SSA's failure to make the requested records publicly available deprives NYLAG of access to information to which it has a statutory entitlement.

156.    Other non-profit, public interest organizations rely on the POMS, EMs, and AMs to assist individuals with accessing their benefits. For example, CLS stated in public comments that "CLS advocates rely on the POMS to assist thousands of claimants annually with accessing and maintaining their benefits." See Regulations.gov Docket Number SSA-2021-0049-0005.

SSA's failure to make the requested records available to the public harms these organizations in fulfilling their missions, as those organizations will not have access to information essential for understanding SSA's processes for determining beneficiaries' substantive rights .

157.    SSA's failure to make the requested records publicly available also impairs the public's ability to access SSI, SSDI, and other benefits for themselves, friends, and family members.

158.    The fact that SSA staff has access to the requested records, while the public does not, puts NYLAG, other legal services and public interest organizations, and the public at large at an information disadvantage that harms their ability to adequately assist SSA beneficiaries and/or obtain benefits for themselves.

### *NYLAG's FOIA Requests*

*NYLAG's FOIA Request 1*

159.    On April 4, 2023, NYLAG submitted a FOIA Request, seeking SSA's policies for adjudicating FOIA fee waiver requests. This Request was assigned FOIA Request No. SSA-2023-006957 ("FOIA Request 1," Exhibit 1A).

160.    On April 4, 2023, SSA confirmed receipt of FOIA Request 1.

161.    In FOIA Request 1, NYLAG sought a waiver of fees because disclosure of the requested information would be in the public interest and not for commercial use. Specifically, NYLAG explained that the Request would contribute to public understanding of the operations of the government, and in particular, SSA's procedures regarding adjudication of FOIA fee waivers.

162.    On May 1, 2023, NYLAG received a letter from SSA's Freedom of Information Officer, Michelle L. Christ, denying NYLAG's fee waiver request on the grounds that NYLAG's

Request "fail[ed] to explain with reasonable specificity how the disclosure of the information . . . requested will meet the [public interest] factors" that SSA considers under FOIA and its implementing regulation. Letter from Michelle L. Christ to Jessica Ranucci (May 1, 2023) (Exhibit 1B).

163.    On May 10, 2023, NYLAG appealed the fee waiver denial on the basis that NYLAG was entitled to a waiver of fees for those documents. The appeal was designated Appeal No. SSA-2023-008653 ("Fee Waiver Appeal 1," Exhibit 1C).

164.    On May 10, 2023, SSA confirmed receipt of the Appeal.

165.    The statutory deadline for SSA to adjudicate Fee Waiver Appeal 1 was June 8, 2023. To date, SSA has not done so.

166.    The statutory deadline for SSA to make a determination on the entirety of FOIA Request 1 was May 2, 2023. To date, SSA has not done so.

*NYLAG's FOIA Request 2*

167.    On April 4, 2023, NYLAG submitted a FOIA Request seeking documents related to the SSA's proposed use of a payroll matching process with Equifax. This Request was assigned FOIA Request No. SSA-2023-006956 ("FOIA Request 2," Exhibit 2A).

168.    FOIA Request 2 sought records in connection with the Social Security Administration's proposed implementation of automated payroll information exchange with Equifax, an external payroll data provider, to provide payroll information to SSA that the Agency will use to adjust SSI and SSDI benefit amounts. Payroll matching has the potential to lead to many erroneous determinations of SSI and SSDI recipients' benefits.[9]

---

[9] *Cf.* Sarah Mancini, Kate Lang, and Chi Chi Wu, Mismatched and Mistaken: How the Use of an Inaccurate Private Database Results in SSI Recipients Unjustly Losing Benefits (April 2021), *available at* https://justiceinaging.org/wp-content/uploads/2021/04/SSADataReport.pdf.

169.    In FOIA Request 2, NYLAG sought a waiver of fees because disclosure of the requested information would be in the public interest and not for commercial use. Specifically, NYLAG explained that the Request would contribute to public understanding of the operations of the government, and in particular, would help the public to better understand whether SSA has policies and procedures in place regarding an information exchange with a payroll data employer.

170.    On April 4, 2023, SSA acknowledged receipt of the FOIA Request.

171.    On July 26, 2023, NYLAG received a letter from SSA's Freedom of Information Officer, Michelle L. Christ, denying NYLAG's fee waiver request with respect to five of the six sub-requests on the grounds that NYLAG's Request "fail[ed] to explain with reasonable specificity how the disclosure of the information . . . requested will meet the [public interest] factors" that SSA considers under FOIA and its implementing regulation. Letter from Michelle L. Christ to Jessica Ranucci (July 26, 2023) (Exhibit 2B).

172.    On July 28, 2023, NYLAG appealed the fee waiver denial on the basis that NYLAG was entitled to a waiver of fees for those documents ("Fee Waiver Appeal 2," Exhibit 2C).

173.    On August 2, 2023, SSA confirmed electronic receipt of the Appeal.

174.    SSA has not assigned an Appeal Number for this appeal; on information and belief, SSA has not assigned an appeal number because of its transition to a new FOIA processing system.[10]

---

[10] NYLAG submitted this appeal via email, as instructed by SSA's July 26, 2023 letter ("If you disagree with this decision, you may file a written appeal with the Executive Director for the Office of Privacy and Disclosure, Social Security Administration, G-401 WHR, 6401 Security Boulevard, Baltimore, MD 21235. Your appeal must be postmarked or electronically transmitted to FOIA.Public.Liaison@ssa.gov within 90 days of the date of our response to your initial request."). NYLAG received a response from the FOIA.Public.Liaison@ssa.gov email address on August 1, 2023, noting that "[T]he Social Security Administration (SSA) is transitioning to a new Freedom of Information Act (FOIA) processing system, FOIAXpress.  The transition will take approximately three weeks

175.    The statutory deadline for SSA to adjudicate Fee Waiver Appeal 2 was August 30, 2023. To date, SSA has not done so.

176.    The statutory deadline for SSA to make a determination on the entirety of FOIA Request 2 was May 2, 2023. To date, SSA has not done so.

*NYLAG's FOIA Request 3*

177.    On July 31, 2023, NYLAG submitted a FOIA Request under FOIA's proactive disclosure provision, 5 U.S.C. § 552 (a)(2), requesting that SSA make the entirety of the POMS, the POMS Comprehensive Index, all EMs, and all AMs publicly available in its electronic reading room. This Request was assigned FOIA Request No. SSA-2023-79687 ("FOIA Request 3," Exhibit 3A).

178.    NYLAG's request specified that "NYLAG is ***not*** requesting that the records described above be released directly to NYLAG. Rather, NYLAG is requesting that, in connection with SSA's affirmative obligation to disclose certain records under FOIA, 5 U.S.C. § 552(a)(2), the requested records be made available in SSA's electronic reading room for access by all members of the public."

179.    NYLAG's request explained that "Because FOIA and SSA's own implementing regulations require SSA to make these records publicly available in its online electronic reading room, and NYLAG is simply requesting SSA's compliance with that statutory mandate, not disclosure to NYLAG itself, no fees can be charged for processing this request."

---

starting July 31, 2023 to complete.  All cases will be transferred to FOIAXpress for processing, however, there may be a temporary delay in addressing your requests while we move to the new system." Out of an abundance of caution, NYLAG also submitted the appeal via postal mail on August 1, 2023; tracking shows that this appeal was received by SSA on August 4, 2023. NYLAG also attempted to submit the appeal via the new FOIAXpress online portal but the portal would not allow the submission. In any event, on August 3, 2023, SSA confirmed by email that "we have received your appeal."

180.    On August 2, 2023, SSA acknowledged electronic receipt of the FOIA Request.

181.    On August 28, 2023, NYLAG received a letter from SSA's Freedom of Information Officer, Michelle L. Christ, stating that NYLAG's request "present[ed] unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(iii) because it "require[d] the need for consultation with multiple components of the agency" and that SSA would provide further correspondence no later than September 25, 2023.  Letter from Michelle L. Christ to Jessica Ranucci (August 28, 2023).

182.    On September 21, 2023 NYLAG received a letter from SSA's Freedom of Information Officer, Michelle L. Christ, stating that "SSA publicly posts a public version of the POMS at https://secure.ssa.gov/apps10/. From our public POMS site, you may view publicly available EMs. We do not presently plan to post the remaining records you requested." (Exhibit 3B).

183.    On September 22, 2023, NYLAG appealed the denial of FOIA Request 3. The appeal was designated Appeal No. 2023-APP-02743 ("Appeal 3," Exhibit 3C).

184.    The statutory deadline for SSA to adjudicate NYLAG's Appeal 3 was October 23, 2023. To date, SSA has not done so.

## PLAINTIFF'S CLAIMS FOR RELIEF

### Claim One
### (Policy and Practice of Denying Fee Waivers in Violation of FOIA)

185.    Defendant has adopted and engaged in a policy and practice of violating FOIA's fee waiver provisions, 5 U.S.C. § 552(a)(4)(A), by denying fee waivers to requesters that satisfy the statutory and regulatory criteria.

186.    On information and belief, SSA fails to consider each fee waiver request on its own merits; fails to meaningfully consider the factors governing fee waivers set forth in its own

regulations; fails to adequately address the showings the requesters make as to why they are entitled to a fee waiver; and issues fee waiver denials with boilerplate language that is not individualized to each request or requester.

187.     Defendant's repeated and unlawful actions in violation of FOIA and SSA's implementing regulation have harmed and will continue to harm NYLAG, and other FOIA requesters, by requiring NYLAG and those requesters to either pay processing fees despite its statutory entitlement to a fee waiver, or incur the costs and delay associated with litigating its entitlement to a fee waiver.

188.     Defendant's unlawful policy or practice of denying fee waivers to requesters who have satisfied the fee waiver requirements will continue absent intervention by this Court.

189.     NYLAG is therefore entitled to injunctive and declaratory relief to compel Defendant to comply with the fee waiver provisions of FOIA and the SSA regulations and to prevent Defendant from continuing to apply its unlawful FOIA practice or policy. *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Hous. & Urb. Dev.*, 415 F. Supp. 3d 215 (D.D.C. 2019). NYLAG is also entitled to costs and attorneys' fees.

**Claim Two**
**(Improper Denial of Fee Waiver Requested in NYLAG's**
**Requests 1 and 2, in Violation of FOIA)**

190.     On April 4, 2023, NYLAG submitted FOIA Requests 1 and 2 to SSA.

191.     In each of NYLAG's FOIA Requests 1 and 2, NYLAG demonstrated that it is entitled to a waiver of fees, because disclosure of responsive records will likely contribute to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of NYLAG.

37

192.    SSA denied each of NYLAG's fee waiver requests in violation of the statute and regulation and using boilerplate language. SSA fully denied NYLAG's fee waiver requests with respect to FOIA Request 1 and partially denied NYLAG's fee waiver request with respect to FOIA Request 2.

193.    NYLAG is entitled to injunctive and declaratory relief, as well as costs and attorneys' fees.

**Claim Three**
**(Withholding of Records Responsive to NYLAG's**
**FOIA Requests 1 and 2 in Violation of FOIA)**

194.    On April 4, 2023, NYLAG submitted FOIA Requests 1 and 2 to SSA.

195.    To date, SSA has not released the records sought by NYLAG's FOIA Requests 1 and 2.

196.    SSA has no legal basis for failing to respond to, or withholding, NYLAG's FOIA Requests 1 and 2 within the statutory and regulatory deadlines.

197.    NYLAG is entitled to injunctive and declaratory relief, as well as costs and attorney's fees.

**Claim Four**
**(Failure to Make Documents Publicly Available in Violation of FOIA)**

198.    The POMS, EMs and AMs constitute "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," and/or "administrative staff manuals and instructions to staff that affect a member of the public" within the meaning of 5 U.S.C. § 552(a)(2)(B), (C).

199.    Indexes of the POMS, EMs, and AMs constitute "current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated . . . and required . . . to be made available or published" within the meaning of 5 U.S.C. § 552(a)(2)(E).

200.    SSA has a statutory obligation to make these requested records available for public inspection in an electronic format and there is no legal basis for its failure to do so.

201.    SSA has a statutory obligation to make an index of these documents available for public inspection in an electronic format and there is no legal basis for its failure to do so.

202.    NYLAG is entitled to injunctive and declaratory relief, as well as costs and attorneys' fees.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff NYLAG respectfully requests that this Court:

(1)     Enjoin Defendant SSA from:

    a.    continuing to engage in an impermissible practice or policy of denying fee waivers to requesters that have satisfied all statutory and regulatory criteria; and

    b.    continuing to engage in an impermissible practice or policy of withholding records required to be made available for public inspection in an electronic format;

(2)     Order Defendant SSA to:

    a.    cease engaging in an impermissible practice or policy of denying fee waivers to requesters that have satisfied all statutory and regulatory criteria;

    b.    make the following records available for public inspection in an electronic format through posting in an online electronic reading room: (i) the Program Operations Manual System (POMS), (ii) all Emergency Messages (EMs) and Administrative Messages (AMs), and (iii) an index of these documents;

    c.    grant NYLAG a fee waiver for FOIA Requests 1 and 2; and

    d.    produce the records requested by FOIA Requests 1 and 2 to NYLAG without delay;

(3)     Declare that:

    a.    SSA is engaged in an impermissible practice or policy of denying fee waivers to requesters that have satisfied all statutory and regulatory criteria;

    b.    Defendant's failure to make publicly available in an electronic format the following documents is unlawful: (i) the Program Operations Manual System (POMS), (ii) all Emergency Messages (EMs) and Administrative Messages (AMs), and (iii) an index of these documents;

    c.   SSA's denial of NYLAG's full fee waiver requests for FOIA Requests 1 and 2 is unlawful;

    d.   SSA's withholding of records requested by FOIA Requests 1 and 2 is unlawful;

(4)    Award NYLAG its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5)    Grant such other and further relief as this Court may deem just and proper.


Dated: October 24, 2023

                        Lisa Rivera, Esq.
                        NEW YORK LEGAL ASSISTANCE GROUP
                        100 Pearl St., 19th Floor
                        New York, NY 10004
                        (212) 613-5000

                        By:

                        _____
                        Jessica Ranucci, of counsel
                        Danielle Tarantolo, of counsel
                        (212) 613-7578
                        jranucci@nylag.org
                        dtarantolo@nylag.org