

June 21, 2024

Hon. Ona T. Wang
Magistrate Judge
500 Pearl St.
New York, NY 10007

Re: *New York Legal Assistance Group v. Social Security Administration*, No. 23 Civ. 9363

Dear Judge Wang:

We write on behalf of Plaintiff New York Legal Assistance Group ("NYLAG") and Defendant the Social Security Administration ("SSA" or "the Agency") in advance of the June 25, 2024 conference in this matter to provide the parties' joint status update as directed by Your Honor's Order, ECF Nos. 32. As Your Honor will recall, the Parties last appeared before the Court on May 15, 2024 for a lengthy conference regarding discovery and other related issues in this complex litigation.

### *Plaintiff's Statement:*

As the parties discussed in detail last month, Plaintiff had been working diligently for months to settle this lawsuit. Plaintiff believes that its claims are exceedingly strong, that litigation of these claims should be unnecessary, and that a quick settlement would be advantageous for all parties. But because SSA insisted on litigation, and is in exclusive possession of factual information material to its liability, Plaintiff sought and received the Court's leave to file discovery requests, which we did on May 30. As set forth in more detail below, we now respectfully seek the Court's assistance in securing the Agency's compliance with those requests and moving this litigation to as swift a possible conclusion.

*Plaintiff's Discovery Requests:* As directed by the Court, ECF No. 32, Plaintiff served limited Interrogatories and Requests for Production on SSA on May 30.[1] In the same email that served those Requests, we invited the Agency to work with us on a number of specific proposals for streamlining the requested discovery to limit the Agency's burden, and also for staging discovery to prioritize materials to aid settlement. However, to effectuate the proposals, we needed certain additional information from the Agency. To that end, we conferred with SSA on June 4, followed up by email on June 5, and conferred again with SSA on June 18. But even by June 18, the Agency was not able to provide any information on any of the outstanding proposals, did not state when it will make any production, and did not agree on the prioritization

---

[1] Mindful of the spirit of Local Rule 5.1, we are not attaching these requests to this letter, but to the extent that it would be helpful for the Court to review these Requests, we can provide or file them at or before the conference.

of any requests.

By way of example, Plaintiff invested many hours creating a full index of public and non-public POMS and EMs by importing SSA's available data for nearly 30,000 documents into an excel spreadsheet. (Plaintiff had requested such an index from SSA for months to advance settlement discussions, but SSA refused to provide it.) When we served our discovery requests, we invited the Agency to confirm the accuracy of the index, because, if accurate, it would enable Plaintiff to make a finely tuned proposal for a relevant sample of non-public POMS and EMs, as well as promote settlement discussions. But the Agency has yet to respond. As another example, one of Plaintiff's requests sought all Administrative Messages (AMs), because the Agency has kept secret even the list of what AMs exist; but we asked for an index of AMs so we could identify only a reasonable sample for production. The Agency has not provided that index either. There are other examples we would be happy to discuss at the conference.

During the June 18 call, the Agency did state that it will not be making a production or providing responses on July 1, when the responses are due under the Federal Rules; instead, SSA has proposed to provide its position with respect to each Request during a call on June 26. SSA also requested that Plaintiff agree to a stay of discovery in order to discuss settlement, but since Plaintiff has fruitlessly tried to advance settlement discussions for months, Plaintiff has made clear that we will not consent to any stay. Indeed, we believe that the only to advance this case to a resolution, whether through litigation or settlement, is by obtaining the Court's assistance in setting and enforcing clear, reasonable discovery deadlines.

*Protective Order:* The Parties are negotiating a protective order to apply to discovery. SSA's proposed protective order is extremely strict—automatically designating *all* produced material as confidential. Plaintiff is willing to enter it, but only if doing so will facilitate an easier and quicker release of information by the Agency by reducing the levels of Agency review. But despite repeated requests, SSA has not confirmed whether the proposed order would have that effect.

*NYLAG's FOIA Requests:* On May 31, SSA issued a final response as to NYLAG's FOIA Requests 4, 5, and 6; that response again denied NYLAG's fee waiver requests and charged NYLAG approximately $1,800 for a response to NYLAG's Requests 4 and 5. NYLAG is transmitting that payment to the Agency.

*Defendant's Proposed Motion to Dismiss:* As Your Honor may recall, SSA filed a pre-motion letter with respect to a proposed motion to dismiss the evening before the previous conference. We have now carefully reviewed the letter, and prepared a chart setting forth SSA's arguments and Plaintiff's analysis of those arguments, attached as Plaintiff's Exhibit A. We wish to raise two important issues regarding this motion with the Court.

First, we believe that, even if successful (an outcome we believe is extremely unlikely), *none* of SSA's proposed arguments would change the scope of discovery or the substance of the claims asserted by Plaintiff. Plaintiff's thinking is set forth in detail in the chart, but in short,

NYLAG's systemic claim challenging wrongful fee waivers (Claims 1 and 2, pled as alternative legal bases for the same facts and relief) will proceed regardless, although the outcome of the motion could dictate whether it proceeds under FOIA and/or under the APA, and whether it proceeds on an individual or aggregate/class basis. Either way, the scope of discovery and litigation would be the same. NYLAG's systemic claim on affirmative disclosures (Claim 5) and individual claims as to the response to its own FOIA Requests (Claim 4) will also proceed regardless, since the motion to dismiss would not challenge them. And, to the extent the Court were to view NYLAG's claims as to its own fee waiver denials (Claim 3) as materially affecting the course of the litigation, that claim would also proceed regardless, although the outcome of the motion could dictate whether  under FOIA or the APA, and which of NYLAG's Requests the claim covers.

Second, we have raised concerns that certain of SSA's proposed arguments have no legitimate legal basis. Specifically, SSA asserts that 42 U.S.C. § 1306 (an SSA-specific fee statute), and not FOIA, applies to all of NYLAG's FOIA Requests (Requests 1, 2, 4, 5, and 6). If SSA is asserting that, as a legal matter, all FOIA requests to SSA are adjudicated under § 1306 and not FOIA, we believe that position is baseless, as it contravenes the language of the statute itself and the Agency's own regulation (20 C.F.R. § 402.170) and sub-regulatory guidance (POMS GN 03311.005), each of which set forth criteria for distinguishing which requests do and do not fall under § 1306. If, on the other hand, SSA is asserting that, as a factual matter, all of NYLAG's FOIA requests to SSA were adjudicated under § 1306 and not FOIA, we believe  this position is also baseless, because it contravenes the language of SSA's denial letters to NYLAG for four of NYLAG's five FOIA Requests, which do not mention § 1306; in any event, that factual argument would rely on the administrative record and thus be appropriate for summary judgment rather than a motion to dismiss. We have invited the U.S. Attorney's Office numerous times (in writing on May 22, May 24, and June 5, and in the June 18 call) to provide more information that could alleviate these concerns, but have not received any response.

We continue to believe that given that the scope of issues at summary judgment will not be affected by any motion to dismiss arguments, it would be most efficient to raise all of these issues in a single round of summary judgment briefing. We have advised the Agency of the above arguments and have noted that, in the event that we ultimately prevail in this action, the Agency will incur substantial attorneys' fees from having forced two rounds of briefing.

Notwithstanding the above, to the extent that the Court orders motion to dismiss briefing, the parties have agreed upon the following briefing schedule: the SSA's motion would be due July 19, 2024; Plaintiff's opposition would be due August 23, 2024, and the SSA's reply would be due September 13, 2024..

*Potential Settlement:* Plaintiff has repeatedly described the contours of a potential settlement of Claim 5 (regarding affirmative disclosure practices), including on June 4 with Agency counsel present, and has identified with particularity the information and documents we need, and which are exclusively in SSA's possession, in order to make a detailed proposal.  As

described above, Defendant has not clarified when and if it will be providing that material, which is also covered by Plaintiff's discovery requests. Plaintiff's position is that the Court's involvement would be exceedingly helpful in moving the Parties toward a potential resolution of that claim, and, ideally, the litigation as a whole. Defendant has not yet notified us whether it consents to a settlement conference before the Court.

### SSA's Statement:

#### 1. FOIA Requests

As NYLAG notes above, on May 31, 2024, the SSA issued final determinations on FOIA Requests 4, 5, and 6, as defined in the Amended Complaint. Despite NYLAG's contention above that the SSA "denied NYLAG's fee waiver requests," the SSA actually granted fee waivers for certain parts of the FOIA requests, denied the fee waivers for other parts of the Requests, and produced records at no charge for other portions of the Requests. Specifically, for Request 4, which contained three parts, the SSA granted the fee waiver with respect to the first part, denied the fee waiver with respect to the second part, and provided the records responsive to the third part of the Request at no charge. For Request 5, which contained three parts (and eight subparts), the SSA denied the fee waiver for parts one and two and waived the fee for part three of the Request. For Request 6, the SSA denied the fee waiver, but found no responsive records, and did not charge Plaintiff for its search.

#### 2. Discovery & NYLAG's request for materials to make a settlement offer

As NYLAG notes above, on May 30, 2024, it served document requests and interrogatories on the SSA. Significantly, the requests as written are extremely broad. NYLAG's discovery requests call for the SSA to produce an enormous amount of information, including over 600 Program Operation Manual Systems ("POMS")—the very documents that Plaintiff is ultimately seeking through its FOIA requests—and set forth numerous multi-category interrogatories and requests, including requests for "*all* policies, procedures, instructions, directives, guidance, frequently asked questions, training materials, templates, reviews, and audits" for various categories of information that are not limited in scope or time. NYLAG also seeks information about electronic data systems, employees, and supervisors involved in extensive processes dating back to 2019, and records concerning the SSA's funding. Responding to the requests would be extremely burdensome and time consuming and would involve collecting a vast amount of information, if it exists, from multiple components of the SSA. The SSA, along with counsel, has been reviewing the requests and assessing how to respond. Simultaneously, the SSA has, in good faith, been working to identify records that may be responsive to NYLAG's discovery requests, and—as explained to NYLAG verbally on June 18, 2024—what system limitations and capabilities exist for certain requests that may or may not allow SSA to efficiently or technically produce some of the large quantities of information NYLAG has requested. This has been a time-consuming effort involving many agency employees.

The parties engaged in a meeting on June 18, 2024, at which SSA agency counsel was present. During that meeting, NYLAG's counsel asked whether the SSA would be responding to the requests by July 1, 2024. I notified counsel for NYLAG that the agency would not be ready to produce documents by July 1, 2024, and suggested that the parties have a meet-and-confer the week of June 24 so that the parties can talk through the discovery requests, discuss any objections from the SSA, and confer on proposals for narrowing some of the requests, prior to the SSA serving its responses and objections. Counsel for NYLAG agreed that it would be productive for the parties to talk through the requests, to see where the parties could achieve consensus, prior to the SSA serving responses and objections. Accordingly, the parties scheduled a meet-and-confer to discuss the requests for June 26, 2024. NYLAG's generalized request for judicial intervention, only three weeks after serving 12 multipart document requests and 9 multipart interrogatories and before the parties have conducted a detailed meet-and-confer, is therefore, premature.

Further, at the same time that NYLAG served its discovery requests, it made a request for a substantial number of documents for the stated purpose of formulating a settlement offer to SSA on its proactive disclosure claim. The parties have been discussing these requests. In light of NYLAG's concurrent requests for discovery and somewhat narrower settlement proffer materials, the SSA asked NYLAG if it would agree to a stay of discovery in order to address the latter. The agency believes that this request makes practical sense, because it would avoid the agency expending limited resources on two parallel processes. However, as NYLAG has indicated above, it is not amenable to this proposal.

### 3. Protective Order

At the time that NYLAG served its discovery requests, it acknowledged that some of the requested documents and information would raise confidentiality concerns with the agency. The same day, the agency sent NYLAG a draft protective order (a redline over Your Honor's Stipulation and Proposed Protective Order). The draft protective order proposed by the SSA includes certain terms, adopted from the SSA's own standard protective order, as appropriate, to ensure that the SSA's sensitive information is adequately protected and that such information is not filed publicly without first consulting with the SSA. NYLAG has indicated it would consent to the proposed deviations from Your Honor's model protective order if the SSA could explain how such protective order would facilitate an easier and quicker release of information to NYLAG. Given that the SSA does not yet know what documents and information it will be producing to NYLAG, the agency cannot commit to precisely how or what documents or information the protective order will allow the SSA to produce to NYLAG without additional levels of review.

### 4. The SSA's Proposed Motion to Dismiss

As outlined in its pre-motion letter filed on May 14, 2024 (ECF No. 31), the SSA believes it has very strong grounds for dismissal of certain of the claims in the operative complaint, which

would meaningfully narrow the scope of the issues in this matter.   The SSA is entitled, as of right, to file a motion, pursuant to Rule 12(c), after the pleadings are closed (which they have) but early enough so as not to delay trial.   Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.");   *see also Kowalchuck v. Metro. Transportation Auth.*, 94 F.4th 210, 215 (2d Cir. 2024).   Given that no trial date has been set in this action and any such trial would occur far in the future, there is no risk that SSA's proposed motion would delay a trial.   Accordingly, the SSA respectfully requests that the Court enter the parties proposed briefing schedule set forth above.

NYLAG argues that: (i) the proposed motion would not change the scope of discovery; and (ii) it would be more efficient for the parties to file summary judgment motions on all issues raised in the complaint.   On the first point, NYLAG is wrong.   If the SSA were to win on its motion, that would entirely dispose of NYLAG's systemic fee waiver claim, which is pleaded in the alternative under FOIA (Claim One) and under the APA (Claim Two).   NYLAG's contention that the motion would not change this litigation rests on its assumption that it would be able to amend its pleading to add class allegations.   But NYLAG cannot amend as of right in this action.   *See* Fed. R. Civ. P. 15(a)(1).   For NYLAG to amend, it would have to seek leave of the Court to convert this case into a class action, which the SSA would oppose.   Further, NYLAG would have to comply with the procedural and substantive requirements of Rule 23 in order to sue on behalf of a class.

Additionally, to the extent the SSA is precluded from raising its grounds for dismissal of NYLAG's systemic fee waiver claims in a motion to dismiss or for judgment on the pleadings, the SSA would raise such arguments at the summary judgment stage.   If NYLAG believes it needs to assert class claims in order to defeat the SSA's legal grounds for dismissal, it should not wait until summary judgment to do so.   For this very reason, it would not be more efficient to wait until summary judgment for the parties to brief all of the issues in this case.

Further, while the SSA disagrees with NYLAG's claim that the SSA's proposed arguments "have no legitimate legal basis," NYLAG's "concerns" can be raised in their opposition to the SSA's motion.   The SSA notes that despite NYLAG's rhetoric concerning the strength of its claims, its systemic fee waiver claim is styled as a policy and practice claim under FOIA, which the Second Circuit has never recognized as a viable claim, and which one judge on the Court has expressly stated is *not* a claim that can be brought against an agency.   See *Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 18 (2d Cir. 2023) (Menashi, J.) ("a 'policy or practice' claim is not cognizable under the FOIA.").   Accordingly, the SSA respectfully requests that the Court enter the briefing schedule proposed by the parties.

### 5.  *Potential Settlement*

SSA remains willing to discuss settlement proposals by NYLAG.

Thank you for your consideration.

Respectfully submitted,

/s/ Danielle Tarantolo
Danielle Tarantolo
Jessica Ranucci
*Counsel for Plaintiff*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
|  | **Plaintiff's Exhibit A** |
| *Claim #* | *COA* | *Topic* | *NYLAG only or systemic* | *Does SSA propose to dismiss?* | *SSA's proposed basis for MTD* | *Has Plaintiff raised unanswered concerns about MTD argument?* | *Will a successful MTD change litigation of this claim?* |
| 1 | FOIA | Policy and practice of denying fee waivers violates FOIA | Systemic | Yes | Argument 1: "Section 1306(c), not FOIA, . . . governs the SSA's authority to charge fees in connection with FOIA requests." Pre-Motion Letter ECF No. 31, at 2. | Yes. (See letter.) | No. Same facts and relief will be adjudicated in Claim 2, which challenges the same conduct (policy and practice of denying fee waivers) but with an alternative legal basis (violation of the APA, instead of FOIA). The scope of discovery and litigation would be the same. |
| | | | | | Argument 2: "[A] policy and practice claim is not cognizable under FOIA." Ltr. 2. | No. | No. Same facts and relief will be adjudicated in Claim 2. (See above.) |
| 2 | APA | In the alternative to Claim 1, policy and practice of denying fee waivers violates the APA | Systemic | Yes | "[T]he APA does not provide for" a policy and practice claim; "The APA provides judicial review of only discrete and final agency action." Ltr. 2-3. | No. | No. If SSA moves to dismiss on this basis, Plaintiff will cross-move to amend the complaint to add class allegations and/or join additional parties, thereby aggregating multiple parties' challenges as to final agency action taken against each party. Same facts and relief will be adjudicated on a class-wide basis. The scope of discovery and litigation would be the same (albeit more procedurally complicated). |
| 3 | FOIA | Improper denial of NYLAG's fee waiver requests violates FOIA (for each of NYLAG's FOIA Requests 1, 2, 4, 5, 6) | NYLAG only | Yes | Argument 1: NYLAG's "fee waivers were not adjudicated pursuant to FOIA, but pursuant to the SSA's regulation implemented under § 1306(c)." Ltr. 3. | Yes. (See letter.) | No. The Court could read the current complaint as already asserting an APA claim for the FOIA fee waiver denials to NYLAG, or Plaintiff would seek to amend to assert this claim. |
| | | | | | Argument 2: For two of NYLAG's five FOIA requests (Requests 1 and 2, but NOT Requests 4, 5, and 6), "NYLAG has received its documents at no cost and, therefore, has not suffered any injury-in-fact nor any injury that can be redressed by this Court." Ltr. 3. | No. | No. Even if successful, this argument would eliminate this claim only as to Requests 1 and 2; Requests 4 and 5 will remain because SSA has charged $1,800. The scope of discovery and litigation would be the same. |

| 4 | FOIA | Withholding of records responsive to NYLAG's Requests violates FOIA (for each of NYLAG's FOIA Requests 1, 2, 4, 5, 6) | NYLAG only | No | n/a | n/a | No. This claim will proceed regardless because SSA is not moving to dismiss it. |
|---|------|---|---|---|---|---|---|
| 5 | FOIA | Failure to affirmatively disclose POMS, EMs, AMs violates FOIA | Systemic | No | n/a | n/a | No. This claim will proceed regardless because SSA is not moving to dismiss it. |