# Exhibit E

NYLAG
New York Legal Assistance Group

July 28, 2023

Executive Director for the Office of Privacy and Disclosure
Social Security Administration
G-401 WHR
6401 Security Boulevard
Baltimore, MD 21235
FOIA.Public.Liaison@ssa.gov
*Via email*

**Re: Appeal of Fee Waiver Denial for FOIA Request SSA-2023-006956**

To Whom It May Concern:

This appeal of a partial fee waiver denial is submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Social Security Administration's implementing regulations, 20 C.F.R.§§ 402.185 and 402.200. For the reasons that follow, the New York Legal Assistance Group respectfully submits that its fee waiver request should be granted in full.

I. Background

On April 4, 2023, NYLAG submitted a FOIA Request seeking documents related to the SSA's proposed use of a payroll matching process with Equifax. NYLAG sought records in connection with the Social Security Administration's proposed implementation of automated payroll information exchange with Equifax, an external payroll data provider, to administer Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. Payroll matching has the potential to lead to many erroneous determinations of SSI and SSDI recipients' benefits. NYLAG sought a waiver of fees because disclosure of the requested information would be in the public interest and not for commercial use. Specifically, the Request would contribute to public understanding of the operations of the government, and in particular, would help the public to better understand whether SSA has policies and procedures in place regarding an information exchange with a payroll data employer.

The Request explained that NYLAG has demonstrated expertise in the subject area of the FOIA request as well as the intention and demonstrated ability to disseminate the information to the public. The Request elaborated that NYLAG is seeking the requested information specifically to inform the public, including individual clients, advocates, and policy makers, about SSA's operations with respect to the use of Equifax data in eligibility determinations, and related accuracy safeguards. Finally, because of NYLAG's status as a nonprofit organization providing free legal services to New Yorkers with limited means, disclosure would not serve commercial interests.

SSA acknowledged the Request via electronic mail and subsequently assigned the tracking number SSA-2023-006956. On July 26, 2023, SSA transmitted a letter via electronic mail to NYLAG partially denying its fee waiver petition. According to the denial, NYLAG's Requests 1, 2, 3, 5, and 6 "fail[] to explain with reasonable specificity how the disclosure of the information you requested will meet the [factors under 20 C.F.R. § 402.185(b)]" to show the disclosure of the requested information will be in the public interest and SSA "ha[s] not otherwise found that release of the records requested would meet [these factors.]"

We timely submit this appeal and respectfully request that SSA grant its fee waiver application, as the records sought will contribute considerably to public understanding of a matter of great public concern, and will serve no commercial interests.

II. NYLAG's Request and SSA's Governing Regulations

NYLAG's request seeks documents related to the SSA's proposed use of Equifax data and implementation of Equifax's payroll matching process to administer Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits. These documents would contribute to much-needed public understanding of whether SSA has policies and procedures in regarding an information exchange with a payroll data provider, and specifically, what standards will be imposed for data matching by SSA.

SSA's July 26, 2023 letter granted a fee waiver for Request 4:

- **Request 4**: All document(s) relating to assessment of the accuracy of Equifax's data, including, but not limited to:
    a) Equifax's "regularly conduct[ed] quality assurance assessments to ensure accuracy" of data of employers, 86 Fed. Reg. 5303; and
    b) Any information in SSA's possession regarding Equifax's use of "reasonable procedures to ensure maximum accuracy, relevance, and timeliness of its wage and employment information," 86 Fed. Reg. 5303.

However, SSA denied NYLAG's fee waiver request for Requests 1, 2, 3, 5, and 6:

- **Request 1**: Contracts and/or agreements between the SSA and Equifax providing for information exchange of payroll data.
- **Request 2**: All SSA guidance, policies, and procedures relating to SSA's actual or proposed use of payroll data from Equifax, including, but not limited to:
    a) policies for SSA's independent verification of data obtained through information exchange;
    b) SSA's policies for notice to beneficiaries prior to any reduction or termination of benefits after a review of Equifax payroll data, including any policies regarding the disclosure of the use of an Equifax report or the consumer's right to obtain a copy of their Equifax report;
    c) SSA's policies for any appeals process available to beneficiaries in challenging reduction or termination of benefits after a review of Equifax payroll data;

   d) SSA's policies for compliance with the Fair Credit Reporting Act with respect to its use of Equifax's payroll data; and
   e) the beneficiary's authorization and revocation of SSA's access to wage and employment information from Equifax.

- **Request 3**: All other document(s) relating to the proposed information exchange between SSA and Equifax, including, but not limited to:
   a) any document(s) describing the Equifax payroll database, including all sources of the Equifax's payroll data; and
   b) "technical specifications, characteristics, and needs" provided by the SSA to Equifax, including, but not limited to, "detailed requirements and pertinent information regarding the request, response, security requirements, Web Service, data retention, and processing guidelines related to the information exchange," 86 Fed. Reg. 5303.
- **Request 5**: All assessments, studies, and/or cost-benefit analyses conducted regarding the SSA's use of Equifax as a payroll data provider, including the consideration of alternative payroll data providers.
- **Request 6**: Documents relating to access to SSA data by Equifax.

As elaborated below, each of NYLAG's requests merits a full fee waiver pursuant to SSA's regulations, which provide for a fee waiver when disclosure of the requested information:

(1) **is in the public interest** because it is likely to contribute significantly to public understanding of the operations or activities of the government; and
(2) **is not primarily in the commercial interest** of the requester.

20 C.F.R. §402.185(a) (emphasis added).

As to the first "public interest" prong, SSA considers the following factors:

(1) How the records pertain to the Federal government's operations or activities.
(2) Whether disclosure would reveal any meaningful information about government operations or activities not already known to the public.
(3) Whether the disclosure will advance the general public's understanding as distinguished from a narrow segment of interested persons, and
(4) Whether the contribution to public understanding would be significant.

*Id.* § 402.185(b). Regarding the second, "non-commercial interest" prong, SSA considers:

(1) Whether the disclosure would further a commercial interest of the requester, or of someone on whose behalf the requester is acting. "Commercial interests" include interests relating to business, trade, and profit. Not only profit-making corporations have commercial interests - so do nonprofit corporations, individuals, unions, and other associations. The interest of a representative of the news media in using the information for news dissemination purposes will not be considered a commercial interest.

(2) If disclosure would further a commercial interest of the requester, whether that effect would outweigh the advancement of the public interest in disclosure that disclosure is primarily in the commercial interest of the requester.

*Id.* § 402.185(c).

III. NYLAG's Request Merits a Fee Waiver

A. The Same Reasoning That Led SSA to Grant the Waiver for Request 4 Compels Granting the Waiver for the Remainder of NYLAG's Requests.

Because SSA granted the fee waiver with respect to NYLAG's Request 4, it has already determined that disclosure of information about Equifax's data matching to NYLAG is in the public interest. As detailed below, NYLAG seeks records in response to Request 4 for the exact same reason as it seeks records in response to Requests 1, 2, 3, 5, and 6: to help the public to better understand how SSA intends to use Equifax payroll data matching. There is no rational reason to distinguish between the public interest relevant to Request 4 and the remainder of NYLAG's Requests.

Because SSA granted the fee waiver with respect to NYLAG's Request 4, it has already determined that NYLAG has no commercial interest in obtaining information regarding the accuracy of Equifax's data. As described in detail below, NYLAG has no commercial interest in obtaining *any* information regarding Equifax. There is no rational reason to distinguish between NYLAG's nonexistent commercial interest relevant to Request 4 and the remainder of NYLAG's Requests.

Accordingly, the determinations that SSA itself has already made with respect to Request 4 compel waiving the fee for the remainder of the Requests.

B. The Public Has a Compelling Interest in the Requested Information

Contrary to the assertions in SSA's denial letter, the information NYLAG seeks will substantially enhance the understanding of the public at large regarding a topic that is poorly understood: SSA's operations with respect to the use of Equifax data in eligibility determinations, and related accuracy safeguards.

We understand that SSA has already taken steps to arrange a potential information exchange with Equifax, which could affect determinations of benefits recipients' substantive rights. However, the public is not well informed about SSA's potential use of Equifax payroll data, and there is extremely little information publicly available now regarding the way SSA plans to use the data and the accuracy standards imposed by SSA or Equifax. The requested information—and in particular NYLAG's Requests 1, 2, 3, 5, and 6—will help the public to better understand whether SSA has policies and procedures in place to effectively address this issue, particularly, what standards will be imposed for data matching by SSA. As SSI and SSDI recipients need their benefits to have access to food, health care, and housing, the requested information may reveal information closely tied to the livelihood of the public.

Thus, there is no question that the general topic of SSA's policies and procedures for payroll data from Equifax is a matter of great public interest. This context bears directly on the public interest value of NYLAG's request for records, which, for the reasons set forth below, satisfies each of SSA's four factors for determining that disclosure of the requested information serves the public interest.

*1. The Requests Concerns Government Operations and Activities*

There can be no dispute that NYLAG's request involves information regarding "identifiable operations and activities of the government." *See* 20 C.F.R. §402.185(b)(1). The Request seeks records regarding discrete aspects of SSA's operations and activities regarding SSA's use of Equifax payroll data.

Request 1 specifically seeks the contracts and/or agreements between SSA and Equifax providing for information exchange of payroll data, which directly involves the policies and safeguards that SSA plans to implement in any operations receiving this data. Request 2 specifically seeks all SSA guidance, policies, and procedures relating to SSA's actual or proposed use of payroll data from Equifax, including SSA's policies for verifying data, notifying beneficiaries of reductions resulting from data, allowing for appeals relating to reductions resulting from data, and how beneficiaries may revoke SSA's access to their Equifax data—in other words, the policies that govern SSA's operations and activities related to this issue. Request 3 seeks any description of the Equifax payroll database and technical specifications provided by SSA to Equifax, which directly relates to SSA's activities involving this payroll data. Request 5 specifically seeks any assessments conducted regarding SSA's use of Equifax as a payroll data provider, which directly sheds light on SSA's operational decision-making. And Request 6 seeks documents that directly relate to SSA's operations regarding access of Equifax data.

Because each of NYLAG's Requests seek specific information about SSA's policies and procedures regarding use of Equifax payroll data, including verification, effects on beneficiaries, agreed-upon specifications, and analyses, the Request directly concerns SSA's operations and activities.

*2. The Requested Information Will Reveal Important Information About SSA's Use of Equifax Data and Standards for Use*

Turning to the next factor, "disclosure of the records" requested will reveal "meaningful information about government operations or activities" that "is not already public knowledge." *See* 20 C.F.R. §402.185(b)(2). SSA has not yet disclosed information to the public regarding its own policies and procedures related to how SSA plans to use the data and the standards imposed by SSA and Equifax.

As described above, many recipients rely on their benefits through SSA. But beneficiaries and the public do not know how SSA plans to use payroll data payroll data, nor can they be sure that the data will not be inaccurate, unverified, or result in the reduction or termination of their

benefits. Each of NYLAG's Requests 1, 2, 3, 5, and 6 will help the public to better understand whether SSA has policies and procedures in place to effectively address major points where SSA's use of the Equifax data could affect recipients' substantive rights. As the recipients need these benefits to have access to food, health care, and housing, the requested information may reveal information closely tied to the livelihood of the public. NYLAG has plainly demonstrated with far more than "reasonable specificity the link between [our] request and the enhancement of public awareness and understanding of governmental activities" that will result from the Department's disclosures. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Educ.*, 593 F. Supp. 2d 261, 270 (D.D.C. 2009).

*3. The Information Will Contribute to the Public's Understanding, and NYLAG Will Effectively Disseminate This Information*

As described above, NYLAG's request will contribute to the understanding of SSA's operations by a broad cross-section of the public, including current and potential beneficiaries of the social security benefits and advocates of advising these beneficiaries. NYLAG has the capacity, intention, demonstrated ability, and expertise to disseminate information responsive to this FOIA request to members of the public.

First, as one of New York's largest civil legal service providers, NYLAG annually provides legal assistance at 111 community offices, to more than 90,000 low-income New Yorkers, many of whom are Social Security, SSI, or SSDI beneficiaries. Further, NYLAG's client base relies on government benefits to access food, health care, and housing. In the past three years, NYLAG has assisted over 3,700 individuals with issues regarding their benefits administered by SSA. NYLAG seeks disclosure of records responsive to its FOIA request to better counsel thousands of New Yorkers. These activities are a wholly sufficient basis for determining that NYLAG's request is in the public interest. *See, e.g.*, *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 814 (2d Cir. 1994) ("Information need not actually reach a broad cross-section of the public in order to benefit the public at large."); *Cmty. Legal Servs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 405 F. Supp. 2d 553, 556 (E.D. Pa. 2005) (reversing denial of fee waiver for request that would "interest[]" a "reasonably large segment of Philadelphia's low- and moderate-income families").

Second, in addition to enabling NYLAG to better serve its own client base, release of the requested records will allow NYLAG to further the public interest by disseminating not only the document, but also our analyses of and conclusions about the information therein, to the public, including other advocates who contribute to the public conversation regarding social security benefits and also advise low-income clients. NYLAG is uniquely situated to disseminate this information and advocate for beneficiaries who rely on social security benefits for their access to food, healthcare, and housing. For example, NYLAG provides regular training both directly to recipients, and to advocates, about how to help New Yorker access the SSI and SSDI benefits they're entitled to, and as part of the training NYLAG would share the information we have gained from SSA to enhance the public understanding of SSA's operations. NYLAG also engages in national advocacy calls with public benefits advocates where NYLAG would share the information from SSA with other advocates. Moreover, NYLAG issues "Know Your Rights" materials on its website (www.nylag.org/dap) disseminating the information gained from SSA

and would direct the clients to those materials to help resolve their issues. NYLAG will engage in similar activities to analyze and disseminate documents responsive to the request currently pending before SSA. NYLAG's capacity and demonstrated past efforts to disseminate such information weigh heavily in favor of NYLAG's fee waiver request.

*4. Given Limited Public Awareness of SSA's Use of Equifax Payroll Data, SSA's Disclosures Will Significantly Enhance Public Understanding*

As explained throughout this appeal, NYLAG seeks information of great concern to a large cross-section of the public — information that is virtually absent from the public domain at present. Accordingly, the "public's understanding of" information regarding SSA's implementation of an information exchange with a payroll data provider will likely be "substantially greater as a result of the disclosure." *See* 20 C.F.R. §402.185(b)(4). Because the requested information in Requests 1, 2, 3, 5, and 6 relates to the contract between SSA and Equifax, data that is provided pursuant to the contract and ways this data is used—including SSA's own verification and notification procedures, analyses and studies, and specifications—disclosure of this information will help the current and prospective beneficiaries of SSI and SSDI benefits, community organizations, and policymakers determine exactly what issues may need to be addressed with regard to understand SSA's policy and how payroll data matching will be used by SSA. The public's understanding of SSA's operations with respect to the use of Equifax data in eligibility determinations, and related accuracy safeguards, will be significantly enhanced by the disclosure.

In short, each of SSA's criteria for assessing the public's interest weighs strongly in favor of granting NYLAG's full fee waiver request.

C. <u>NYLAG Has No Commercial Interest</u>

Finally, NYLAG has no commercial interest in the subject matter of this request. NYLAG's intended purpose for soliciting the information is not related to "business, trade, or profit." *See* 20 C.F.R. § 402.185(c). NYLAG is a 501(c)(3) non-profit organization, whose mission is to "provide[] high quality, free civil legal services to low-income New Yorkers who cannot afford attorneys."[1] Unlike those rare cases in which a non-profit organization may have a commercial interest in the subject of a FOIA request — such as when a non-profit essentially seeks to promote an industry's commercial interests, *see VoteHemp, Inc. v. Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 65 (D.D.C. 2002) — NYLAG advocates on behalf of its clients who are seeking to receive or currently receiving public benefits administered by the Social Security Administration. NYLAG provides direct services representing individuals who cannot afford other representation to ensure they have access to the public benefits they deserve, and NYLAG does not charge nor receive any fees in representing these clients. NYLAG's request will provide no commercial benefit to NYLAG, its clients, and its coalition members, and we will distribute our analyses of responsive records freely to the public.

[1] *See* New York Legal Assistance Group, *About Us*, http://nylag.org/about-us (emphasis added).

For the reasons articulated above, our fee waiver request clearly meets the public interest and non-commercial interest tests. The information we seek is of significant interest to the public, and we will distribute it widely and with the added value of our analyses. This information will significantly expand the public understanding of SSA's practices, to the benefit of low-income beneficiaries and other interested members of the public at large.

Thank you very much for your assistance.

Sincerely,

Jessica Ranucci
New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004
Telephone: (212) 613-7578
Email: jranucci@nylag.org