# Exhibit K

NYLAG
New York Legal Assistance Group

February 7, 2024

Executive Director for the Office of Privacy and Disclosure
Social Security Administration
G-401 WHR
6401 Security Boulevard
Baltimore, MD 21235
FOIA.Public.Liaison@ssa.gov
*Via email*

*Re: Appeal of Fee Waiver Denial for FOIA Request 2024-FOIA-00391*

To Whom It May Concern:

This appeal of a fee waiver denial and determination of non-program purpose is submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Social Security Administration's implementing regulations, 20 C.F.R.§§ 402.185 and 402.200. For the reasons that follow, the New York Legal Assistance Group respectfully submits that its fee waiver request should be granted in full and, in the alternative, its request should be deemed to have been made for program purposes.

I. Background

A. NYLAG's FOIA Request

On December 6, 2023, the New York Legal Assistance Group ("NYLAG") submitted a FOIA request to the Social Security Administration ("SSA"), seeking any non-public versions of guidance, manuals, or handbooks for CEs, MEs, VEs, MCs; any policy, or written guidance, related to certain circumstances when a Consultative Examination is required; and, a copy of a report created by SSA on best practices for the Consultative Exam oversight meeting with state agencies held in spring of 2023. In connection with this Request, NYLAG submitted a fee waiver request on the grounds that disclosure of the requested information would be in the public interest. Specifically, NYLAG's request explained that many individuals and nonprofit organizations such as NYLAG have an interest in understanding the specific training and guidance that is given to CEs, MEs, VEs, MCs, given the determinative role they play in allowing the public access to benefits. Additionally, NYLAG's request explained that the policies, or written guidance, on when a Consultative Examination is required, along with any report created on best practices for the Consultative Exam oversight meeting would help the public to better understand the interactions of these policies and to understand when and why they are required to undergo a Consultative examination.

The Request explained that NYLAG has demonstrated expertise in the subject area of the FOIA request as well as the intention and demonstrated ability to disseminate the information to the public. The Request elaborated that NYLAG is seeking the requested information specifically to inform the public, including individual clients, advocates, and policy makers. Finally, because of NYLAG's status as a nonprofit organization providing free legal services to New Yorkers with limited means, disclosure would not serve commercial interests. SSA acknowledged the Request via e-mail and subsequently assigned the tracking number *2024-FOIA-00391.*

B. SSA's Fee Waiver Denial and Determination of Non-Program Purpose

On December 22, 2023, SSA transmitted a letter via electronic mail to NYLAG denying its fee waiver petition. SSA's fee waiver denial stated that:

> Your fee waiver request fails to explain with reasonable specificity how the disclosure of the information you requested will meet the above [fee waiver] factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors. Accordingly, applying the standards listed above, I cannot waive the fee.

Additionally, SSA's fee waiver denial stated that:

> We are charging you fees for your request under section 1106(c) of the Social Security Act (Act) (42 U.S.C. § 1306(c)). Because we have invoked section 1106(c), the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request. Section 1106(c) applies notwithstanding FOIA and provides that we charge the full cost for search and reproduction of records when the request is for a purpose not directly related to the administration of a program under the Act (20 C.F.R. § 402.175), *regardless* of the fee provisions in FOIA. We determined that your request is not directly related to the administration of the Act. Accordingly, we will charge you for the full cost to provide the requested information (42 U.S.C. § 1306(c); 20 C.F.R. § 402.175(a)).

II. Fee Waiver Appeal

We timely submit this appeal and respectfully request that SSA grant NYLAG's fee waiver application in its entirety, as the records sought will contribute considerably to public understanding of a matter of great public concern, and will serve no commercial interests. As detailed in NYLAG's initial request and below, NYLAG is entitled to a waiver of fees under the statutory and regulatory criteria: information regarding SSA's FOIA fee waiver policies is in the public interest and likely to contribute significantly to public understanding of the operations or activities of the government, and is not primarily in NYLAG's commercial interest.

A. The Public Has a Compelling Interest in the Requested Information

The information NYLAG seeks will substantially enhance the understanding of the public at large regarding a topic that is poorly understood: non-public versions of guidance or manuals for CEs, MEs, VEs, MCs. These materials provide instructions to CEs, MEs, VEs, CMs, all of whom make crucial determinations in SSA beneficiaries' cases. There is limited public information available on the specific training and guidance that is given to these employees, despite the determinative role they play in allowing the public access to benefits. The requested information will help the public to better understand what guidance, training, and instruction SSA provides to these employees. Additionally, the determinations made through Consultative Examinations can have a profound impact on the public's ability to access benefits. However, the public does not have access to the any written guidance that states the policies outlined in the request; instead, NYLAG has heard of SSA beneficiaries being informed of these policies without SSA publishing documentation of these requirements. Finally, any report created by SSA regarding these Exams, particularly for an oversight meeting with state agencies, is of interest to the public.

*1. The Requests Concerns Government Operations and Activities*

There can be no dispute that NYLAG's request involves information regarding "identifiable operations and activities of the government." *See* 20 C.F.R. §402.185(b)(1). The Request seeks records regarding discrete aspects of SSA: guidance or manuals for staff who make determinations on SSA beneficiaries' cases. Therefore, the Request directly concerns SSA's operations and activities.

*2. The Requested Information Will Reveal Important Information About SSA's FOIA Practices*

Turning to the next factor, "disclosure of the records" requested will reveal "meaningful information about government operations or activities" that "is not already public knowledge." *See* 20 C.F.R. §402.185(b)(2). SSA has not yet disclosed the requested information. NYLAG specifically seeks non-public guidance and manuals for CEs, MEs, VEs, and CMs. NYLAG has plainly demonstrated with far more than "reasonable specificity the link between [our] request and the enhancement of public awareness and understanding of governmental activities" that will result from the Department's disclosures. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Educ.,* 593 F. Supp. 2d 261, 270 (D.D.C. 2009).

*3. The Information Will Contribute to the Public's Understanding, and NYLAG Will Effectively Disseminate This Information*

As described above, NYLAG's request will contribute to the understanding of SSA's policies and procedures regarding administration of benefits, which could affect virtually every

American. NYLAG has the capacity, intention, demonstrated ability, and expertise to disseminate information responsive to this FOIA request to members of the public, specifically, individuals who rely on SSA for subsistence benefits and the advocates who work with them.

First, as one of New York's largest civil legal service providers, NYLAG annually provides legal assistance at 111 community offices, to more than 90,000 low income New Yorkers, a large number of whom are Social Security, SSI, or SSDI beneficiaries. Further, NYLAG's client base relies on government benefits to access food, health care, and housing. NYLAG seeks disclosure of records responsive to its FOIA request in order to better counsel thousands of New Yorkers. In 2022, NYLAG's Public Benefit Unit responded to over six hundred intake calls advising individuals of issues regarding access to SSI or SSDI benefits and closed over three hundred cases counseling low-income individuals in accessing their benefits. Each individual's case may give rise to issues that would be appropriate for a FOIA request, and so NYLAG's activities are a wholly sufficient basis for determining that NYLAG's request is in the public interest. *See, e.g., Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 814 (2d Cir. 1994) ("Information need not actually reach a broad cross-section of the public in order to benefit the public at large."); *Cmty. Legal Servs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 405 F. Supp. 2d 553, 556 (E.D. Pa. 2005) (reversing denial of fee waiver for request that would "interest[]" a "reasonably large segment of Philadelphia's low- and moderate-income families").

Second, in addition to enabling NYLAG to better serve its own client base, release of the requested records will allow NYLAG to further the public interest by disseminating not only the records, but also our analyses of and conclusions about the information therein, to the public, including other advocates who contribute to the public conversation regarding social security benefits and also advise low-income clients. NYLAG is uniquely situated to disseminate this information and advocate for beneficiaries who rely on social security benefits for their access to food, healthcare, and housing. For example, NYLAG provides regular training both directly to recipients, and to advocates, about how to help New Yorker access the SSI and SSDI benefits they're entitled to, and as part of the training NYLAG would share the information we have gained from SSA to enhance the public understanding of SSA's operations. NYLAG also engages in national advocacy calls with public benefits advocates where NYLAG would share the information from SSA with other advocates. Moreover, NYLAG issues "Know Your Rights" materials on its website (www.nylag.org/dap) disseminating the information gained from SSA and would direct the clients to those materials to help resolve their issues. NYLAG will engage in similar activities to analyze and disseminate documents responsive to the request currently pending before SSA. NYLAG's capacity and demonstrated past efforts to disseminate such information weigh heavily in favor of NYLAG's fee waiver request.

4. *Given Limited Public Awareness of SSA's FOIA Practices, SSA's Disclosures Will Significantly Enhance Public Understanding*

As explained throughout this appeal, NYLAG seeks information of great concern to a large cross-section of the public — information that is virtually absent from the public domain at present. Accordingly, the "public's understanding of" information regarding SSA's policies for administering SSA benefits—including guides and handbooks for SSA employees who make crucial determinations on SSA beneficiaries' cases—will likely be "substantially greater as a result of the disclosure." *See* 20 C.F.R. §402.185(b)(4). The public has very little knowledge on these procedures, as the requested documents are not currently available to the public.

In short, each of SSA's criteria for assessing the public's interest weighs strongly in favor of granting NYLAG's full fee waiver request.

B. NYLAG Has No Commercial Interest

Finally, NYLAG has no commercial interest in the subject matter of this request. NYLAG's intended purpose for soliciting the information is not related to "business, trade, or profit." *See* 20 C.F.R. § 402.185(c). NYLAG is a 501(c)(3) non-profit organization, whose mission is to "provide[] high quality, free civil legal services to low-income New Yorkers who cannot afford attorneys."[1] Unlike those rare cases in which a non-profit organization may have a commercial interest in the subject of a FOIA request — such as when a non-profit essentially seeks to promote an industry's commercial interests, *see VoteHemp, Inc. v. Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 65 (D.D.C. 2002) — NYLAG advocates on behalf of its clients who are seeking to receive or currently receiving public benefits administered by the Social Security Administration. NYLAG provides direct services representing individuals who cannot afford other representation to ensure they have access to the public benefits they deserve, and NYLAG does not charge nor receive any fees in representing these clients. NYLAG's request will provide NYLAG, its clients, and its coalition members no commercial benefit, and we will distribute our analyses of responsive records freely to the public.

For the reasons articulated above, our fee waiver request clearly meets the public interest and non-commercial interest tests. The information we seek is of significant interest to the public, and we will distribute it widely and with the added value of our analyses. This information will significantly expand the public understanding of SSA's practices, to the benefit of low-income beneficiaries and other interested members of the public at large.

III. Appeal of Determination of Non-Program Purpose

[1] *See* New York Legal Assistance Group, *About Us*, http://nylag.org/about-us (emphasis added).

We write further to appeal SSA's determination that NYLAG's request was not directly related to the administration of the Social Security Act pursuant to 42 U.S.C. § 1306(c) and 20 C.F.R. § 402.175(a).

Specifically, 20 C.F.R. § 402.175(a)(2)(i) sets forth the "major criteria" used by SSA in making this determination:

> (A) Is the information needed to pursue some benefit under the Act?
>
> (B) Is the information needed solely to verify the accuracy of information obtained in connection with a program administered under the Act?
>
> (C) Is the information needed in connection with an activity which has been authorized under the Act?
>
> (D) Is the information needed by an employer to carry out her or his taxpaying responsibilities under the Federal Insurance Contributions Act or section 218 of the Act?

20 C.F.R. § 402.175(a)(2)(ii) further states that SSA "will consider on a case by case basis those requests which do not meet these criteria but are claimed to be program related."

Further, POMS GN 03311.005 sets forth "Examples of Purposes Which Meet the Definition," including "To determine eligibility or entitlement under Social Security programs (e.g., for Social Security benefits, Supplemental Security Income payments, Medicare, etc.)."

A. <u>The requested information is needed to pursue benefits under the Act for NYLAG's clients.</u>

NYLAG's request fits squarely into the regulatory for a program purpose in 20 C.F.R. § 402.175(a)(2)(ii)(A): this information is needed to pursue benefits under the Act. Specifically, as detailed above, NYLAG seeks the requested documents in order to advise its low-income clients on seeking benefits provided by the Social Security Administration. Manuals or handbooks used by Consultative Examiners, Medical Experts, Vocational Experts, and Medical Consultants, sought by this request, bear on the legal standard by which recipients' entitlement to benefits is determined, which is needed to pursue benefits under the Act for NYLAG's clients. Likewise, certain policies, guidance, and best practices relating to diagnosis records, consultative exams, and medical source statements, sought by the request, bear on the legal standard by which recipients' entitlement to benefits is determined, which is needed to pursue benefits under the Act for NYLAG's clients.

In other words, each of these roles affects a person's eligibility for benefits, whether through offering opinions on evidence on medical condition or employment availability. The guidance they use to make these determinations, therefore, bear directly on individuals' entitlement to benefits. Likewise, any policies for when certain medical exams are or are not required is directly related to individuals' receipt of benefits.

B. The requested information is needed to determine eligibility or entitlement under Social Security programs

For the same reasons, NYLAG's request fits squarely into the sub-regulatory for a program purpose in POMS GN 03311.005: this information is needed to determine eligibility or entitlement under Social Security programs. Specifically, as detailed above, NYLAG seeks the requested documents in order to advise its low-income clients on their eligibility or entitlement for programs offered by the Social Security Administration. Manuals or handbooks used by Consultative Examiners, Medical Experts, Vocational Experts, and Medical Consultants, sought by this request, bear on the legal standard by which recipients' entitlement to benefits is determined, which is needed to determine NYLAG's clients' eligibility for Social Security programs. Likewise, certain policies, guidance, and best practices relating to diagnosis records, consultative exams, and medical source statements, sought by the request, bear on the legal standard by which recipients' entitlement to benefits is determined, which is needed to determine NYLAG's clients' eligibility for Social Security programs. In other words, this information is relevant to NYLAG and its clients *only because* it is used to determine their eligibility or entitlement under Social Security benefits programs. Were it not used to determine recipients' benefits, NYLAG would not be seeking the requested records.

C. In the alternative, SSA should consider NYLAG's request on "a case by case basis"

In the alternative, SSA should use its authority to determine on a case-by-case basis that NYLAG's request is for a program purpose. NYLAG's request is very similar to what POMS GN 03311.005 uses as a prototypical example of a program-related purpose: "a legal aid organization requests all documentation SSA has concerning the Supplemental Security Income provisions on deeming."

By contrast, NYLAG's request is not in any way similar to the examples of non-program purposes provided in POMS GN 03311.005, as each of these example requests seeks records for a purpose other than obtaining benefits under the Act.

- To establish earnings amount and/or verify the existence and durations of employment relationships for private pension purposes;
- To provide information needed for use in civil litigation, (e.g., asbestosis claims, discrimination suits), not related to Social Security programs;
- To establish entitlement to union, company, or private pension benefits;
- To provide income information for workmen's compensation;
- To establish union seniority….

As a legal services organization, NYLAG does not have any purpose for obtaining records other than serving its clients in obtaining and determining eligibility for benefits.

Thank you very much for your assistance.

Sincerely,

New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004
Telephone: (212) 613-7578
Email: jranucci@nylag.org