# Exhibit O

NYLAG
New York Legal Assistance Group

February 7, 2024

Executive Director for the Office of Privacy and Disclosure
Social Security Administration
G-401 WHR
6401 Security Boulevard
Baltimore, MD 21235
FOIA.Public.Liaison@ssa.gov
*Via email*

*Re: Appeal of Fee Waiver Denial for FOIA Request 2024-FOIA-00397*

To Whom It May Concern:

This appeal of a fee waiver denial is submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Social Security Administration's implementing regulations, 20 C.F.R.§§ 402.185 and 402.200. For the reasons that follow, the New York Legal Assistance Group respectfully submits that its fee waiver request should be granted in full.

I. Background

A. NYLAG's FOIA Request

On December 7, 2023, the New York Legal Assistance Group ("NYLAG") submitted a FOIA request to the Social Security Administration ("SSA"), seeking information on disability benefit determinations at the national level for calendar years 2021, 2022, and 2023. Specifically, the request sought data on age-18 Redeterminations; Determinations made under Section 301 of the Rehabilitation Act of 1973; and the top five reason why cases did not qualify for continued benefits under Section 301 and the number of cases that were denied for each reason. In connection with this Request, NYLAG submitted a fee waiver request on the grounds that disclosure of the requested information would be in the public interest. The information NYLAG seeks will substantially enhance the understanding of the public at large regarding various topics related to SSA's policies and procedures for dealing with SSA beneficiaries that are poorly understood and not public.

The Request explained that NYLAG has demonstrated expertise in the subject area of the FOIA request as well as the intention and demonstrated ability to disseminate the information to the public. The Request elaborated that NYLAG is seeking the requested information specifically to inform the public, including individual clients, advocates, and policy makers. Finally, because of NYLAG's status as a nonprofit organization providing free legal services to New Yorkers with limited means, disclosure would not serve commercial interests. SSA

acknowledged the Request via e-mail and subsequently assigned the tracking number *2024-FOIA-00397.*

B. SSA's Fee Waiver Denial

On December 21, 2023, SSA transmitted a letter via electronic mail to NYLAG denying its fee waiver petition. SSA's fee waiver denial stated that:

> Your fee waiver request fails to explain with reasonable specificity how the disclosure of the information you requested will meet the above [fee waiver] factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors. Accordingly, applying the standards listed above, I cannot waive the fee.

II. Fee Waiver Appeal

We timely submit this appeal and respectfully request that SSA grant NYLAG's fee waiver application in its entirety, as the records sought will contribute considerably to public understanding of a matter of great public concern, and will serve no commercial interests. As detailed in NYLAG's initial request and below, NYLAG is entitled to a waiver of fees under the statutory and regulatory criteria: information regarding SSA's FOIA fee waiver policies is in the public interest and likely to contribute significantly to public understanding of the operations or activities of the government, and is not primarily in NYLAG's commercial interest.

A. The Public Has a Compelling Interest in the Requested Information

The information NYLAG seeks will substantially enhance the understanding of the public at large regarding various topics related to SSA's policies and procedures for dealing with SSA beneficiaries that are poorly understood and not public. There is no question that this issue is a matter of great public interest, as it potentially affects every child recipient of SSI benefits and each of their families. This context bears directly on the public interest value of NYLAG's request for records, which, for the reasons set forth below, satisfies each of SSA's four factors for determining that disclosure of the requested information serves the public interest.

*1. The Requests Concerns Government Operations and Activities*

There can be no dispute that NYLAG's request involves information regarding "identifiable operations and activities of the government." *See* 20 C.F.R. §402.185(b)(1). The Request seeks records regarding discrete aspects of SSA: SSA's use of age-18 redeterminations and those pursuant to Section 301, for youth receiving SSI benefits who are transitioning to adulthood.

*2. The Requested Information Will Reveal Important Information About SSA's FOIA Practices*

Turning to the next factor, "disclosure of the records" requested will reveal "meaningful information about government operations or activities" that "is not already public knowledge." *See* 20 C.F.R. §402.185(b)(2). SSA has not yet disclosed the requested information. Specifically, data regarding the use of the 301 program and the number of age-18 determinations nationally is not published by SSA. NYLAG has plainly demonstrated with far more than "reasonable specificity the link between [our] request and the enhancement of public awareness and understanding of governmental activities" that will result from the Department's disclosures. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Educ.,* 593 F. Supp. 2d 261, 270 (D.D.C. 2009).

*3. The Information Will Contribute to the Public's Understanding, and NYLAG Will Effectively Disseminate This Information*

As described above, NYLAG's request will contribute to the understanding of SSA's policies and procedures regarding administration of benefits, which could affect virtually every American. NYLAG has the capacity, intention, demonstrated ability, and expertise to disseminate information responsive to this FOIA request to members of the public, specifically, individuals who rely on SSA for subsistence benefits and the advocates who work with them.

First, as one of New York's largest civil legal service providers, NYLAG annually provides legal assistance at 111 community offices, to more than 90,000 low income New Yorkers, a large number of whom are Social Security, SSI, or SSDI beneficiaries. Further, NYLAG's client base relies on government benefits to access food, health care, and housing. NYLAG seeks disclosure of records responsive to its FOIA request in order to better counsel thousands of New Yorkers. In 2022, NYLAG's Public Benefit Unit responded to over six hundred intake calls advising individuals of issues regarding access to SSI or SSDI benefits and closed over three hundred cases counseling low-income individuals in accessing their benefits. Each individual's case may give rise to issues that would be appropriate for a FOIA request, and so NYLAG's activities are a wholly sufficient basis for determining that NYLAG's request is in the public interest. *See, e.g., Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 814 (2d Cir. 1994) ("Information need not actually reach a broad cross-section of the public in order to benefit the public at large."); *Cmty. Legal Servs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 405 F. Supp. 2d 553, 556 (E.D. Pa. 2005) (reversing denial of fee waiver for request that would "interest[]" a "reasonably large segment of Philadelphia's low- and moderate-income families").

Second, in addition to enabling NYLAG to better serve its own client base, release of the requested records will allow NYLAG to further the public interest by disseminating not only the records, but also our analyses of and conclusions about the information therein, to the public, including other advocates who contribute to the public conversation regarding social security benefits and also advise low-income clients. NYLAG is uniquely situated to disseminate this information and advocate for beneficiaries who rely on social security benefits for their access to food, healthcare, and housing. For example, NYLAG provides regular training both directly to

recipients, and to advocates, about how to help New Yorker access the SSI and SSDI benefits they're entitled to, and as part of the training NYLAG would share the information we have gained from SSA to enhance the public understanding of SSA's operations. NYLAG also engages in national advocacy calls with public benefits advocates where NYLAG would share the information from SSA with other advocates. Moreover, NYLAG issues "Know Your Rights" materials on its website (www.nylag.org/dap) disseminating the information gained from SSA and would direct the clients to those materials to help resolve their issues. NYLAG will engage in similar activities to analyze and disseminate documents responsive to the request currently pending before SSA. NYLAG's capacity and demonstrated past efforts to disseminate such information weigh heavily in favor of NYLAG's fee waiver request.

*4. Given Limited Public Awareness of SSA's FOIA Practices, SSA's Disclosures Will Significantly Enhance Public Understanding*

As explained throughout this appeal, NYLAG seeks information of great concern to a large cross-section of the public — information that is virtually absent from the public domain at present. Accordingly, the "public's understanding of" information regarding regarding SSA's use of Section 301 and age 18 redeterminations will likely be "substantially greater as a result of the disclosure." *See* 20 C.F.R. §402.185(b)(4). The public has very little knowledge on these procedures, as the requested documents are not currently available to the public.

In short, each of SSA's criteria for assessing the public's interest weighs strongly in favor of granting NYLAG's full fee waiver request.

B. <u>NYLAG Has No Commercial Interest</u>

Finally, NYLAG has no commercial interest in the subject matter of this request. NYLAG's intended purpose for soliciting the information is not related to "business, trade, or profit." *See* 20 C.F.R. § 402.185(c). NYLAG is a 501(c)(3) non-profit organization, whose mission is to "provide[] high quality, free civil legal services to low-income New Yorkers who cannot afford attorneys."[1] Unlike those rare cases in which a non-profit organization may have a commercial interest in the subject of a FOIA request — such as when a non-profit essentially seeks to promote an industry's commercial interests, *see VoteHemp, Inc. v. Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 65 (D.D.C. 2002) — NYLAG advocates on behalf of its clients who are seeking to receive or currently receiving public benefits administered by the Social Security Administration. NYLAG provides direct services representing individuals who cannot afford other representation to ensure they have access to the public benefits they deserve, and NYLAG does not charge nor receive any fees in representing these clients. NYLAG's request will provide

---

[1] *See* New York Legal Assistance Group, *About Us*, http://nylag.org/about-us (emphasis added).

NYLAG, its clients, and its coalition members no commercial benefit, and we will distribute our analyses of responsive records freely to the public.

For the reasons articulated above, our fee waiver request clearly meets the public interest and non-commercial interest tests. The information we seek is of significant interest to the public, and we will distribute it widely and with the added value of our analyses. This information will significantly expand the public understanding of SSA's practices, to the benefit of low-income beneficiaries and other interested members of the public at large.

Thank you very much for your assistance.

Sincerely,

New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004
Telephone: (212) 613-7578
Email: jranucci@nylag.org