# Exhibit S

NYLAG
New York Legal Assistance Group

April 4, 2023

Executive Director for the Office of Privacy and Disclosure
Social Security Administration
G-401 WHR
6401 Security Boulevard
Baltimore, MD 21235
FOIA.Public.Liaison@ssa.gov
*Via email*

Re: Appeal of Fee Waiver Denial for FOIA Request SSA-2023-005589

To Whom It May Concern:

This appeal of a fee waiver denial is submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Social Security Administration's implementing regulations, 20 C.F.R.§§ 402.185 and 402.200. For the reasons that follow, the New York Legal Assistance Group respectfully submits that its fee waiver request should be granted in full.

I. Background

On March 6, 2023, the New York Legal Assistance Group ("NYLAG") submitted FOIA request to the Social Security Administration ("SSA"), seeking the release of a copy of Program Operations Manual System (POMS) General (GN) 02402.007 ("POMS 02402.007"), which is associated with SSA's policies regarding Direct Express cards. In connection with this Request, NYLAG submitted a fee waiver petition on the grounds that disclosure of the requested information would be in the public interest. Specifically, the Request would contribute to public understanding of the operations of the government, and in particular, SSA's treatment of recipient complaints regarding funds disbursed on Direct Express cards.

The Request explained that NYLAG has demonstrated expertise in the subject area of the FOIA request as well as the intention and demonstrated ability to disseminate the information to the public. The Request elaborated that NYLAG is seeking the requested information specifically to inform the public, including individual clients, advocates, and policy makers, about the procedures for benefits recipients using Direct Express cards. Finally, because of NYLAG's status as a nonprofit organization providing free legal services to New Yorkers with limited means, disclosure would not serve commercial interests.

SSA acknowledged the Request via electronic mail and subsequently assigned the tracking number SSA-2023-005589. On March 27, 2023, SSA transmitted a letter via electronic mail to NYLAG denying its fee waiver petition. According to the denial, the request "fails to explain with reasonable specificity how the disclosure of the information you requested will

meet the [factors under 20 C.F.R. § 402.185(b)]" to show the disclosure of the requested information will be in the public interest and SSA "ha[s] not otherwise found that release of the records requested would meet [these factors.]"

We timely submit this appeal and respectfully request that SSA grant its fee waiver application, as the records sought will contribute considerably to public understanding of a matter of great public concern, and will serve no commercial interests.

II. NYLAG's Request and SSA's Governing Regulations

NYLAG's request seeks the release of POMS 02402.007, relating to SSA's policies regarding Direct Express cards. These documents would contribute to much-needed public understanding of SSA's treatment of funds disbursed on Direct Express cards and specifically, how recipient's complaints on Direct Express cards are being addressed.

As elaborated below, each of NYLAG's requests merits a full fee waiver pursuant to SSA's regulations, which provide for a fee waiver when disclosure of the requested information:

(1) **is in the public interest** because it is likely to contribute significantly to public understanding of the operations or activities of the government; and
(2) **is not primarily in the commercial interest** of the requester.

20 C.F.R. §402.185(a) (emphasis added).

As to the first, "public interest" prong, SSA considers the following factors:

(1) How the records pertain to the Federal government's operations or activities.
(2) Whether disclosure would reveal any meaningful information about government operations or activities not already known to the public.
(3) Whether the disclosure will advance the general public's understanding as distinguished from a narrow segment of interested persons, and
(4) Whether the contribution to public understanding would be significant.

*Id.* § 402.185(b). With regard to the second, "non-commercial interest" prong, SSA considers:

(1) Whether the disclosure would further a commercial interest of the requester, or of someone on whose behalf the requester is acting. "Commercial interests" include interests relating to business, trade, and profit. Not only profit-making corporations have commercial interests - so do nonprofit corporations, individuals, unions, and other associations. The interest of a representative of the news media in using the information for news dissemination purposes will not be considered a commercial interest.
(2) If disclosure would further a commercial interest of the requester, whether that effect would outweigh the advancement of the public interest in disclosure that disclosure is primarily in the commercial interest of the requester.

*Id.* § 402.185(c).

III. NYLAG's Request Merits a  Fee Waiver

A. <u>The Public Has a Compelling Interest in the Requested Information</u>

Contrary to the assertions in SSA's denial letter, the information NYLAG seeks will substantially enhance the understanding of the public at large regarding a topic that is poorly understood: how SSA responds to the claimants and complaints regarding issues with Direct Express cards.

Since SSA's implementation of Direct Express cards to disburse benefits, there has been a large volume of complaints from recipients related to accessing the funds from Direct Express cards. However, there has been limited public information from SSA on how recipients can address these issues with SSA; instead, they are directed only to contact Direct Express directly to submit a complaint, which often resulted in an unsatisfactory response. The requested information will help the public to better understand whether SSA has policies and procedures in place to assist recipients in reaching Direct Express to help resolve issues they have with accessing their benefits using Direct Express cards. As the recipients need these benefits to have access to food, health care, and housing, the requested information may reveal information that direct impacts the livelihood of the public.

Thus, there is no question that the general topic of Direct Express cards and SSA's policies regarding Direct Express cards is a matter of great public interest. This context bears directly on the public interest value of NYLAG's request for records, which, for the reasons set forth below, satisfies each of SSA's four factors for determining that disclosure of the requested information serves the public interest.

1. *The Requests Concerns Government Operations and Activities*

There can be no dispute that NYLAG's request involves information regarding "identifiable operations and activities of the government." *See* 20 C.F.R. §402.185(b)(1). The Request seeks records regarding discrete aspects of SSA's disbursement of Social Security and SSI benefits through Direct Express card. NYLAG's request seeking specific information regarding SSA's policies regarding Direct Express cards including SSA's treatment of funds disbursed on Direct Express cards and SSA's handling of complaints on issues related to Direct Express card. Therefore, the Request directly concerns SSA's operations and activities.

2. *The Requested Information Will Reveal Important Information About SSA's Use of Direct Express Cards*

Turning to the next factor, "disclosure of the records" requested will reveal "meaningful information about government operations or activities" that "is not already public knowledge." *See* 20 C.F.R. §402.185(b)(2). SSA has not yet disclosed information to the public regarding its own policies and procedures related to treatment of funds disbursed on Direct Express cards and handling of complaints on issues related to accessing benefits from Direct Express cards.

As described above, many recipients experience difficulty accessing their benefits using Direct Express cards but there is lack of clarity on whether SSA can help in resolving this issue. The requested information will help the public to better understand whether SSA has policies and procedures in place to effectively address the issue that recipients have with accessing their benefits using Direct Express cards, particularly, that would provide assistance to recipients in reaching Direct Express. As the recipients need these benefits to have access to food, health care, and housing, the requested information may reveal information closely tied to the livelihood of the public. NYLAG has plainly demonstrated with far more than "reasonable specificity the link between [our] request and the enhancement of public awareness and understanding of governmental activities" that will result from the Department's disclosures. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Educ.*, 593 F. Supp. 2d 261, 270 (D.D.C. 2009).

3. *The Information Will Contribute to the Public's Understanding, and NYLAG Will Effectively Disseminate This Information*

As described above, NYLAG's request will contribute to the understanding of SSA's operations by a broad cross-section of the public, including current and potential beneficiaries of the social security benefits and advocates of advising these beneficiaries. NYLAG has the capacity, intention, demonstrated ability, and expertise to disseminate information responsive to this FOIA request to members of the public.

First, as one of New York's largest civil legal service providers, NYLAG annually provides legal assistance at 111 community offices, to more than 90,000 low income New Yorkers, a large number of whom are Social Security, SSI, or SSDI beneficiaries. Further, NYLAG's client base relies on government benefits to access food, health care, and housing. NYLAG seeks disclosure of records responsive to its FOIA request in order to better counsel thousands of New Yorkers. In 2022, NYLAG's Public Benefit Unit responded to over six hundred intake calls advising individuals of issues regarding access to SSI or SSDI benefits and closed over three hundred cases counseling low-income individuals in accessing their benefits. These activities are a wholly sufficient basis for determining that NYLAG's request is in the public interest. *See, e.g.*, *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 814 (2d Cir. 1994) ("Information need not actually reach a broad cross-section of the public in order to benefit the public at large."); *Cmty. Legal Servs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 405 F. Supp. 2d 553, 556 (E.D. Pa. 2005) (reversing denial of fee waiver for request that would "interest[]" a "reasonably large segment of Philadelphia's low- and moderate-income families").

Second, in addition to enabling NYLAG to better serve its own client base, release of the requested records will allow NYLAG to further the public interest by disseminating not only the document, but also our analyses of and conclusions about the information therein, to the public, including other advocates who contribute to the public conversation regarding social security benefits and also advise low-income clients. NYLAG is uniquely situated to disseminate this information and advocate for beneficiaries who rely on social security benefits for their access to food, healthcare, and housing. For example, NYLAG provides regular training both directly to recipients, and to advocates, about how to help New Yorker access the SSI and SSDI benefits they're entitled to, and as part of the training NYLAG would share the information we have

gained from SSA to enhance the public understanding of SSA's operations. NYLAG also engages in national advocacy calls with public benefits advocates where NYLAG would share the information from SSA with other advocates. Moreover, NYLAG issues "Know Your Rights" materials on its website (www.nylag.org/dap) disseminating the information gained from SSA and would direct the clients to those materials to help resolve their issues. NYLAG will engage in similar activities to analyze and disseminate documents responsive to the request currently pending before SSA. NYLAG's capacity and demonstrated past efforts to disseminate such information weigh heavily in favor of NYLAG's fee waiver request.

*4. Given Limited Public Awareness of SSA's Treatment of Direct Express Cards, SSA's Disclosures Will Significantly Enhance Public Understanding*

As explained throughout this appeal, NYLAG seeks information of great concern to a large cross-section of the public — information that is virtually absent from the public domain at present. Accordingly, the "public's understanding of" information regarding SSA's implementation of Direct Express cards to distribute Social Security benefits and SSI benefits existing prior to the disclosure will likely be "substantially greater as a result of the disclosure." *See* 20 C.F.R. §402.185(b)(4). The public has very little knowledge on the operation of Direct Express cards and when the recipients inquire SSA about the issues regarding Direct Express cards, SSA does not provide clear instructions to resolve their issues. The requested information would significantly advance the public's understanding of how SSA handles the issues raised by claimants relating to Direct Express cards.

In short, each of SSA's criteria for assessing the public's interest weighs strongly in favor of granting NYLAG's full fee waiver request.

B. NYLAG Has No Commercial Interest

Finally, NYLAG has no commercial interest in the subject matter of this request. NYLAG's intended purpose for soliciting the information is not related to "business, trade, or profit." *See* 20 C.F.R. § 402.185(c). NYLAG is a 501(c)(3) non-profit organization, whose mission is to "provide[] high quality, free civil legal services to low-income New Yorkers who cannot afford attorneys."[1] Unlike those rare cases in which a non-profit organization may have a commercial interest in the subject of a FOIA request — such as when a non-profit essentially seeks to promote an industry's commercial interests, *see VoteHemp, Inc. v. Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 65 (D.D.C. 2002) — NYLAG advocates on behalf of its clients who are seeking to receive or currently receiving public benefits administered by the Social Security Administration. NYLAG provides direct services representing individuals who cannot afford other representation to ensure they have access to the public benefits they deserve, and NYLAG does not charge nor receive any fees in representing these clients. NYLAG's request will provide NYLAG, its clients, and its coalition members no commercial benefit, and we will distribute our analyses of responsive records freely to the public.

---

[1] *See* New York Legal Assistance Group, *About Us*, http://nylag.org/about-us (emphasis added).

For the reasons articulated above, our fee waiver request clearly meets the public interest and non-commercial interest tests. The information we seek is of significant interest to the public, and we will distribute it widely and with the added value of our analyses. This information will significantly expand the public understanding of SSA's practices, to the benefit of low-income beneficiaries and other interested members of the public at large.

Thank you very much for your assistance.

Sincerely,

Jessica Ranucci
New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004
Telephone: (212) 613-7578
Email: jranucci@nylag.org

## FOIA Appeal SSA-2023-007003 Submitted

no-reply@foiaonline.gov <no-reply@foiaonline.gov>

Wed 4/5/2023 9:38 AM

To: Jessica Ranucci <JRanucci@nylag.org>

This message is to notify you of a new appeal submission to the FOIAonline application. Appeal information is as follows:

- Appeal Tracking Number: SSA-2023-007003
- Request Tracking Number: SSA-2023-005589
- Requester Name: Jessica Ranucci
- Date Submitted: 04/05/2023
- Appeal Status: Submitted
- Description: Fee waiver appeal - our fee waiver request clearly meets the public interest and non-commercial interest tests. The information we seek is of significant interest to the public, and we will distribute it widely and with the added value of our analyses. This information will significantly expand the public understanding of SSA's practices, to the benefit of low-income beneficiaries and other interested members of the public at large.