# Exhibit KK

NYLAG
New York Legal Assistance Group

April 4, 2023

Social Security Administration
Office of Privacy and Disclosure
ATTN: Freedom of Information Officer
WHR G401
6401 Security Boulevard
Baltimore, MD 21235

*Via Social Security Administration Freedom of Information Act (FOIA) Public Access Link*

*Re: Freedom of Information Act Request for Records Relating to the Information Exchange Between the Social Security Administration and Equifax, a payroll data provider*

Dear FOIA Public Liaison Officer:

This request for records is submitted pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, and the Social Security Administration's implementing regulations, 20 C.F.R. § 402 *et seq.* The New York Legal Assistance Group (NYLAG) is a non-profit, public interest group, and we seek these records for non-commercial uses.

Social Security Administration ("SSA") published a notice of proposed information exchange between the SSA and Equifax, a payroll data provider, on January 19, 2021, 86 Fed. Reg. 5,303. As detailed below, NYLAG seeks documents related to the SSA's proposed use of Equifax data and implementation of Equifax's payroll matching process to administer Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits.

## Definitions

The term ''**payroll data provider**'' means payroll providers, wage verification companies, and other commercial or non-commercial entities that collect and maintain data regarding employment and wages, without regard to whether the entity provides such data for a fee or without cost. 42 U.S.C. 1320e-3(c)(1).

The term "**payroll data**" refers to the information and records related to an organization's employee compensation and benefits, including wages, salaries, bonuses, overtime pay, deductions, taxes, and other related information.

The term ''**information exchange**'' means the automated comparison of a system of records maintained by the Commissioner of Social Security with records maintained by a payroll data provider. 42 U.S.C. 1320e-3(c)(2).

**Documents Requested**

**Request 1**: Contracts and/or agreements between the SSA and Equifax providing for information exchange of payroll data.

**Request 2**: All SSA guidance, policies, and procedures relating to SSA's actual or proposed use of payroll data from Equifax, including, but not limited to:

a) policies for SSA's independent verification of data obtained through information exchange;
b) SSA's policies for notice to beneficiaries prior to any reduction or termination of benefits after a review of Equifax payroll data, including any policies regarding the disclosure of the use of an Equifax report or the consumer's right to obtain a copy of their Equifax report;
c) SSA's policies for any appeals process available to beneficiaries in challenging reduction or termination of benefits after a review of Equifax payroll data;
d) SSA's policies for compliance with the Fair Credit Reporting Act with respect to its use of Equifax's payroll data; and
e) the beneficiary's authorization and revocation of SSA's access to wage and employment information from Equifax.

**Request 3**: All other document(s) relating to the proposed information exchange between SSA and Equifax, including, but not limited to:

a) any document(s) describing the Equifax payroll database, including all sources of the Equifax's payroll data; and
b) "technical specifications, characteristics, and needs" provided by the SSA to Equifax, including, but not limited to, "detailed requirements and pertinent information regarding the request, response, security requirements, Web Service, data retention, and processing guidelines related to the information exchange," 86 Fed. Reg. 5303.

**Request 4**: All document(s) relating to assessment of the accuracy of Equifax's data, including, but not limited to:

a) Equifax's "regularly conduct[ed] quality assurance assessments to ensure accuracy" of data of employers, 86 Fed. Reg. 5303; and
b) Any information in SSA's possession regarding Equifax's use of "reasonable procedures to ensure maximum accuracy, relevance, and timeliness of its wage and employment information," 86 Fed. Reg. 5303.

**Request 5**: All assessments, studies, and/or cost-benefit analyses conducted regarding the SSA's use of Equifax as a payroll data provider, including the consideration of alternative payroll data providers.

**Request 6**: Documents relating to access to SSA data by Equifax.

**Request for Waiver of Fees:**

A. The Public Has a Compelling Interest in the Requested Information

The information NYLAG seeks will substantially enhance the understanding of the public at large regarding a topic that is poorly understood: what policies SSA has put in place to facilitate potential future information exchange with a payroll data provider. Although SSA has not yet implemented an information exchange, and will likely include regulations regarding a potential information exchange in a future NPRM, we understand that SSA has already taken steps to arrange a potential information exchange with Equifax. However, there has been limited public information from SSA on how that information exchange will work, to the extent that policies have already been put into place. The requested information will help the public to better understand whether SSA has policies and procedures in regarding an information exchange with a payroll data provider.

Thus, there is no question that the general topic of a payroll information exchange bears directly on the public interest value of NYLAG's request for records, which, for the reasons set forth below, satisfies each of SSA's four factors for determining that disclosure of the requested information serves the public interest.

1. *The Requests Concerns Government Operations and Activities*

There can be no dispute that NYLAG's request involves information regarding "identifiable operations and activities of the government." *See* 20 C.F.R. §402.185(b)(1). Specifically, this FOIA request concerns the activities of the Social Security Administration and its implementation of automated payroll information exchange with an external payroll data provider to administer SSDI benefits and SSI benefits. This request seeks to discover the exact policies and bases of the use of such automated information exchange as SSA administers the SSDI and SSI programs. Therefore, the Request directly concerns SSA's operations and activities.

2. *The Requested Information Will Reveal Important Information About SSA's Use of an Information Exchange with a Payroll Data Provider*

Turning to the next factor, "disclosure of the records" requested will reveal "meaningful information about government operations or activities" that "is not already public knowledge." *See* 20 C.F.R. §402.185(b)(2). Specifically, NYLAG seeks information related to the accuracy of the Equifax data matching process and the safeguards, if any, planned to be applied by SSA in its review of this data. This information will contribute the public understanding of SSA's policies in this regard. The general public is not well informed about SSA's potential use of Equifax payroll data, and there is extremely little information publicly available now regarding the way SSA plans to use the data and the accuracy standards imposed by SSA or Equifax. The requested information will help the public to better understand whether SSA has policies and procedures in place to effectively address this issue, particularly, what standards will be imposed for data matching by SSA. As SSI and SSDI recipients need theeir benefits to have access to food, health care, and housing, the requested information may reveal information closely tied to the

livelihood of the public. NYLAG has plainly demonstrated with far more than "reasonable specificity the link between [our] request and the enhancement of public awareness and understanding of governmental activities" that will result from the Department's disclosures. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Educ.*, 593 F. Supp. 2d 261, 270 (D.D.C. 2009).

*3. The Information Will Contribute to the Public's Understanding, and NYLAG Will Effectively Disseminate This Information*

As described above, NYLAG's request will contribute to the understanding of SSA's operations by a broad cross-section of the public, including current and potential beneficiaries of the social security benefits and advocates of advising these beneficiaries. NYLAG has the capacity, intention, demonstrated ability, and expertise to disseminate information responsive to this FOIA request to members of the public.

First, as one of New York's largest civil legal service providers, NYLAG annually provides legal assistance at 111 community offices, to more than 90,000 low income New Yorkers, a large number of whom are Social Security, SSI, or SSDI beneficiaries. Further, NYLAG's client base relies on government benefits to access food, health care, and housing. NYLAG seeks disclosure of records responsive to its FOIA request in order to better counsel thousands of New Yorkers. In 2022, NYLAG's Public Benefit Unit responded to over six hundred intake calls advising individuals of issues regarding access to SSI or SSDI benefits and closed over three hundred cases counseling low-income individuals in accessing their benefits. These activities are a wholly sufficient basis for determining that NYLAG's request is in the public interest. *See, e.g.*, *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 814 (2d Cir. 1994) ("Information need not actually reach a broad cross-section of the public in order to benefit the public at large."); *Cmty. Legal Servs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 405 F. Supp. 2d 553, 556 (E.D. Pa. 2005) (reversing denial of fee waiver for request that would "interest[]" a "reasonably large segment of Philadelphia's low- and moderate-income families").

Second, in addition to enabling NYLAG to better serve its own client base, release of the requested records will allow NYLAG to further the public interest by disseminating not only the requested records, but also our analyses of and conclusions about the information therein, to the public, including other advocates who contribute to the public conversation regarding social security benefits and also advise low-income clients. NYLAG is uniquely situated to disseminate this information and advocate for beneficiaries who rely on social security benefits for their access to food, healthcare, and housing. For example, NYLAG provides regular training both directly to recipients, and to advocates, about how to help New Yorker access the SSI and SSDI benefits they're entitled to, and as part of the training NYLAG would share the information we have gained from SSA to enhance the public understanding of SSA's operations. NYLAG also engages in national advocacy calls with public benefits advocates where NYLAG would share the information from SSA with other advocates. Moreover, NYLAG issues "Know Your Rights" materials on its website (www.nylag.org/dap) disseminating the information gained from SSA and would direct the clients to those materials to help resolve their issues. NYLAG will engage in similar activities to analyze and disseminate documents responsive to the request currently

pending before SSA. NYLAG's capacity and demonstrated past efforts to disseminate such information weigh heavily in favor of NYLAG's fee waiver request.

*4. Given Limited Public Awareness of SSA's Proposed Information Exchange, SSA's Disclosures Will Significantly Enhance Public Understanding*

As explained throughout this appeal, NYLAG seeks information of great concern to a large cross-section of the public — information that is virtually absent from the public domain at present. Accordingly, the "public's understanding of" information regarding SSA's implementation of an information exchange with a payroll data provider will likely be "substantially greater as a result of the disclosure." *See* 20 C.F.R. §402.185(b)(4). Because the requested information relates to the contract between SSA and Equifax, data that is provided pursuant to the contract, ways this data is used, and testing of accuracy of the data, disclosure of this information will help the current and prospective beneficiaries of SSI and SSDI benefits, community organizations, and policymakers determine exactly what issues may need to be addressed with regard to understand SSA's policy and how payroll data matching will be used by SSA. The public's understanding of SSA's operations with respect to the use of Equifax data in eligibility determinations, and related accuracy safeguards, will be significantly enhanced by the disclosure.

In short, each of SSA's criteria for assessing the public's interest weighs strongly in favor of granting NYLAG's full fee waiver request.

B. <u>NYLAG Has No Commercial Interest</u>

Finally, NYLAG has no commercial interest in the subject matter of this request. NYLAG's intended purpose for soliciting the information is not related to "business, trade, or profit." *See* 20 C.F.R. § 402.185(c). NYLAG is a 501(c)(3) non-profit organization, whose mission is to "provide[] high quality, free civil legal services to low-income New Yorkers who cannot afford attorneys."[1] Unlike those rare cases in which a non-profit organization may have a commercial interest in the subject of a FOIA request — such as when a non-profit essentially seeks to promote an industry's commercial interests, *see VoteHemp, Inc. v. Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 65 (D.D.C. 2002) — NYLAG advocates on behalf of its clients who are seeking to receive or currently receiving public benefits administered by the Social Security Administration. NYLAG provides direct services representing individuals who cannot afford other representation to ensure they have access to the public benefits they deserve, and NYLAG does not charge nor receive any fees in representing these clients. NYLAG's request will provide NYLAG, its clients, and its coalition members no commercial benefit, and we will distribute our analyses of responsive records freely to the public.

For the reasons articulated above, our fee waiver request clearly meets the public interest and non-commercial interest tests. The information we seek is of significant interest to the

---

[1] *See* New York Legal Assistance Group, *About Us*, http://nylag.org/about-us (emphasis added).

public, and we will distribute it widely and with the added value of our analyses. This information will significantly expand the public understanding of SSA's practices, to the benefit of low-income beneficiaries and other interested members of the public at large.

Should you deny this waiver request, I am willing to pay fees up to a maximum of $25. If you estimate that the fees will exceed this limit, please advise me of the costs before proceeding. *See* 20 C.F.R. § 402.180(a).

***

We look forward to receiving a determination pursuant to each request within twenty business days, as required by 5 U.S.C. § 552(a)(6)(A)(i). Please also inform us on a rolling basis of the existence of any records responsive to any request as you identify them, regardless of whether additional records responsive to that or other requests may be identified in the future. It is our strong preference to accept records in electronic format. Records can be emailed or otherwise provided to jranucci@nylag.org. Alternatively, if records need to be provided in hard copy, they can be mailed to the following address:

New York Legal Assistance Group
ATTN: Jessica Ranucci
Special Litigation Unit
New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004

If for any reason any request is denied, please inform me of the reason(s) for the denial in writing. Thank you very much for your assistance.

Sincerely,

Jessica Ranucci
New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004
Telephone: (212) 613-7578
Email: jranucci@nylag.org