# Exhibit NN

NYLAG
New York Legal Assistance Group

December 7, 2023

Social Security Administration
Office of Privacy and Disclosure
ATTN: Freedom of Information Officer
WHR G401
6401 Security Boulevard
Baltimore, MD 21235

*Via Social Security Administration Freedom of Information Act (FOIA) Public Access Link*

Dear FOIA Public Liaison Officer:

This request for records is submitted to the Social Security Administration (SSA) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, and the Social Security Administration's implementing regulations, 20 C.F.R. § 402 *et seq.* The New York Legal Assistance Group (NYLAG) is a non-profit, public interest group, and we seek these records for non-commercial uses.

**Documents Requested**

**Request**: Information on disability benefit determinations at the national level for calendar years 2021, 2022, and 2023:

(A) For age-18 Redeterminations:
- i. The number of initial age-18 redeterminations where claims were allowed and continued;
- ii. The number of initial age-18 redetermination where a cessation decision was issued;
- iii. The number of continuations and cessations at the reconsideration level;
- iv. The number of continuations and cessations from appeals after reconsideration; and;
- v. The breakdown by disability code for age-18 redetermination continuations and cessations.

(B) For Determinations under Section 301 of the Rehabilitation Act of 1973:
- i. The total number of cases medically ceased after an age-18 redetermination in the entire United States that were analyzed for eligibility under Section 301;
  - a. Of those, the total number of cases in which benefits were continued based on a favorable 301 determination;
  - b. The total number of cases in which benefits were not continued; and
  - c. The total number of cases in which a 301 determination did not have to be made because a favorable disability determination was made prior to the interruption of SSI benefits.

(C) The top five reasons why cases did not qualify for continued benefits under Section 301 and the number of cases that were denied for each reason.

## REQUEST FOR FEE WAIVER

A. The Public Has a Compelling Interest in the Requested Information

The information NYLAG seeks will substantially enhance the understanding of the public at large regarding various topics related to SSA's policies and procedures for dealing with SSA beneficiaries that are poorly understood and not public. Specifically, NYLAG seeks data regarding age-18 redeterminations and the use of Section 301 redeterminations.

There is no question that this issue is a matter of great public interest, as it potentially affects every child recipient of SSI benefits and each of their families. This context bears directly on the public interest value of NYLAG's request for records, which, for the reasons set forth below, satisfies each of SSA's four factors for determining that disclosure of the requested information serves the public interest.

*1. The Requests Concerns Government Operations and Activities*

There can be no dispute that NYLAG's request involves information regarding "identifiable operations and activities of the government." *See* 20 C.F.R. §402.185(b)(1). The Request seeks records regarding discrete aspects of SSA: SSA's use of age-18 redeterminations and those pursuant to Section 301, for youth receiving SSI benefits who are transitioning to adulthood.

Therefore, the Request directly concerns SSA's operations and activities.

*2. The Requested Information Will Reveal Important Information About SSA's FOIA Practices*

Turning to the next factor, "disclosure of the records" requested will reveal "meaningful information about government operations or activities" that "is not already public knowledge." *See* 20 C.F.R. §402.185(b)(2). SSA has not yet disclosed the requested information. Specifically, data regarding the use of the 301 program and the number of age-18 determinations nationally is not published by SSA. NYLAG has plainly demonstrated with far more than "reasonable specificity the link between [our] request and the enhancement of public awareness and understanding of governmental activities" that will result from the Department's disclosures. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Educ.*, 593 F. Supp. 2d 261, 270 (D.D.C. 2009).

*3. The Information Will Contribute to the Public's Understanding, and NYLAG Will Effectively Disseminate This Information*

As described above, NYLAG's request will contribute to the understanding of SSA's policies and procedures regarding administration of benefits, which could affect virtually every American. NYLAG has the capacity, intention, demonstrated ability, and expertise to

disseminate information responsive to this FOIA request to members of the public, specifically, individuals who rely on SSA for subsistence benefits and the advocates who work with them.

First, as one of New York's largest civil legal service providers, NYLAG annually provides legal assistance at 111 community offices, to more than 90,000 low-income New Yorkers, a large number of whom are Social Security, SSI, or SSDI beneficiaries. Further, NYLAG's client base relies on government benefits to access food, health care, and housing. NYLAG seeks disclosure of records responsive to its FOIA request in order to better counsel thousands of New Yorkers. In the past three years, NYLAG has assisted over 3,700 individuals with issues regarding their benefits administered by SSA. Each child SSI recipient's case may give rise to issues that interact with the issues raised by this request for age 18 redeterminations and use of Section 301, and so NYLAG's activities are a wholly sufficient basis for determining that NYLAG's request is in the public interest. *See, e.g., Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 814 (2d Cir. 1994) ("Information need not actually reach a broad cross-section of the public in order to benefit the public at large."); *Cmty. Legal Servs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 405 F. Supp. 2d 553, 556 (E.D. Pa. 2005) (reversing denial of fee waiver for request that would "interest[]" a "reasonably large segment of Philadelphia's low- and moderate-income families").

Second, in addition to enabling NYLAG to better serve its own client base, release of the requested records will allow NYLAG to further the public interest by disseminating not only the records, but also our analyses of and conclusions about the information therein, to the public, including other advocates who contribute to the public conversation regarding social security benefits and also advise low-income clients. NYLAG is uniquely situated to disseminate this information and advocate for beneficiaries who rely on social security benefits for their access to food, healthcare, and housing. For example, NYLAG provides regular training both directly to recipients, and to advocates, about how to help New Yorker access the SSI and SSDI benefits they're entitled to, and as part of the training NYLAG would share the information we have gained from SSA to enhance the public understanding of SSA's operations. NYLAG also engages in national advocacy calls with public benefits advocates where NYLAG would share the information from SSA with other advocates. Moreover, NYLAG issues "Know Your Rights" materials on its website (www.nylag.org/dap) disseminating the information gained from SSA and would direct the clients to those materials to help resolve their issues. NYLAG will engage in similar activities to analyze and disseminate documents responsive to the request currently pending before SSA. NYLAG's capacity and demonstrated past efforts to disseminate such information weigh heavily in favor of NYLAG's fee waiver request.

### *4. Given Limited Public Awareness of SSA's FOIA Practices, SSA's Disclosures Will Significantly Enhance Public Understanding*

As explained throughout this appeal, NYLAG seeks information of great concern to a large cross-section of the public — information that is virtually absent from the public domain at

present. Accordingly, the "public's understanding of" information regarding SSA's use of Section 301 and age 18 redeterminations—will likely be "substantially greater as a result of the disclosure." *See* 20 C.F.R. §402.185(b)(4). The public has very little knowledge on these procedures, as the requested documents are not currently available to the public.

In short, each of SSA's criteria for assessing the public's interest weighs strongly in favor of granting NYLAG's full fee waiver request.

B. NYLAG Has No Commercial Interest

Finally, NYLAG has no commercial interest in the subject matter of this request. NYLAG's intended purpose for soliciting the information is not related to "business, trade, or profit." *See* 20 C.F.R. § 402.185(c). NYLAG is a 501(c)(3) non-profit organization, whose mission is to "provide[] high quality, free civil legal services to low-income New Yorkers who cannot afford attorneys."[1] Unlike those rare cases in which a non-profit organization may have a commercial interest in the subject of a FOIA request — such as when a non-profit essentially seeks to promote an industry's commercial interests, *see VoteHemp, Inc. v. Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 65 (D.D.C. 2002) — NYLAG advocates on behalf of its clients who are seeking to receive or currently receiving public benefits administered by the Social Security Administration. NYLAG provides direct services representing individuals who cannot afford other representation to ensure they have access to the public benefits they deserve, and NYLAG does not charge nor receive any fees in representing these clients. NYLAG's request will provide NYLAG, its clients, and its coalition members no commercial benefit, and we will distribute our analyses of responsive records freely to the public.

For the reasons articulated above, our fee waiver request clearly meets the public interest and non-commercial interest tests. The information we seek is of significant interest to the public, and we will distribute it widely and with the added value of our analyses. This information will significantly expand the public understanding of SSA's practices, to the benefit of low-income beneficiaries and other interested members of the public at large.

Should you deny this waiver request, I am willing to pay fees up to a maximum of $25. If you estimate that the fees will exceed this limit, please advise me of the costs before proceeding. *See* 20 C.F.R. § 402.180(a).

***

We look forward to receiving a determination pursuant to each request within twenty business days, as required by 5 U.S.C. § 552(a)(6)(A)(i). Please also inform us on a rolling basis

[1] *See* New York Legal Assistance Group, *About Us*, http://nylag.org/about-us (emphasis added).

of the existence of any records responsive to any request as you identify them, regardless of whether additional records responsive to that or other requests may be identified in the future. It is our strong preference to accept records in electronic format. Records can be emailed or otherwise provided to jranucci@nylag.org. Alternatively, if records need to be provided in hard copy, they can be mailed to the following address:

New York Legal Assistance Group
ATTN: Jessica Ranucci
Special Litigation Unit
New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004

If for any reason any request is denied, please inform me of the reason(s) for the denial in writing. Thank you very much for your assistance.

Sincerely,

Jessica Ranucci
New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004
Telephone: (212) 613-7578
Email: jranucci@nylag.org