**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW YORK LEGAL ASSISTANCE GROUP,<br><br>Plaintiff,<br><br>-v-<br><br>THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | No. 23 Civ. 9363 (ALC) (OTW) |

**DECLARATION OF JENNIFER KARANGELEN**

I, Jennifer Karangelen, Acting Freedom of Information and Privacy Officer for Privacy and Disclosure Policy (PDP) in Law and Policy at the Social Security Administration (SSA), declare as follows pursuant to 28 U.S.C. § 1746:

## I. SSA's Privacy and Disclosure Policy (PDP) Office

1. I am employed at SSA Headquarters as the Acting Freedom of Information and Privacy Officer for PDP, formerly known as the Office of Privacy and Disclosure (OPD).[1] As part of my duties and responsibilities, I have personal knowledge of the procedures SSA employs in handling Freedom of Information Act (FOIA) requests for records pursuant to 5 U.S.C. § 552, and in handling requests for the disclosure of information pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a. I have been an attorney since 2005.

2. SSA employs a "centralized" approach for handling FOIA requests and appeals submitted to the agency. Aside from a subset of simple requests handled by Central Processing, Division of Earnings Corrections, SSA's FOIA responses are issued by PDP.

[1] SSA underwent a reorganization in 2025, and the Office of Privacy and Disclosure was renamed Privacy and Disclosure Policy.

3. SSA overall has approximately 50,000 employees. In addition to Headquarters components, SSA has multiple program service centers and telephone call centers, and over 1,200 field offices.[2] SSA has issued nearly 550 million Social Security numbers[3] and maintains records relating to those numbers, as well as other records relating to SSA's administrative, operating, and business practices. Given the volume of records and offices at SSA, it is vital for the agency to receive properly filed FOIA and information requests, and for those requests to contain as much information as possible to allow SSA to search for specific records.

4. PDP is a component within Law and Policy (LP), and although organizationally located within LP, it is a non-legal office. PDP is made up of around 40 employees across four different divisions: (1) the Disclosure and Data Support Division; (2) the Privacy & Implementation Division; (3) the FOIA and Transparency Division; and (4) the Electronic Interchange, Liaison & Breach Division.

5. Within PDP, the FOIA and Transparency Division is primarily responsible for processing FOIA requests and responding to fee waiver requests. The FOIA and Transparency Division is currently made up of 13 employees: 12 Government Information Specialists ("analysts") and a Division Director, Sarah Reagan. The Division Director and I both report to Matthew Ramsey, Head, PDP.

6. The analysts hold various grade levels, with responsibilities corresponding to their respective grades. Two of the 12 analysts are considered senior analysts, and among other duties, they assist in reviewing the FOIA work of the other 10 analysts. One of the senior analysts assigns FOIA processing work and considers the experience of the analysts when assigning complex

---

[2] *See* Organizational Structure of the Social Security Administration, *available at* https://www.ssa.gov/org.

[3] Statistic current as of August 2025. *See* Historical FAQs, *available at* https://www.ssa.gov/history/hfaq.html.

matters. Most of the FOIA and Transparency Division's analysts have been at the agency for many years. However, when a new analyst starts within PDP, they are assigned to a senior analyst who serves as a mentor. The senior analysts provide guidance on the step-by-step processing of FOIA requests and instruct new analysts on other aspects of their position. This mentorship encompasses all elements of processing a FOIA request, including fee waiver requests.

7. SSA proactively posts a voluminous amount of records to its publicly available SSA.gov website, including for example policy records, hearings manuals, hearings and appeals data, program statistics, and research studies.[4] PDP also maintains and posts many records to SSA's electronic FOIA Reading Room.[5] Nonetheless, SSA receives a large volume of FOIA requests. For example, in fiscal year (FY) 2025, SSA received a total of 14,067 initial requests and 1,193 appeals;[6] in FY 2024, SSA received 12,582 initial requests and 911 appeals.[7] As of August 24, 2026, SSA had received 12,918 FOIA requests and 1,603 appeals in FY 2026.

8. Although SSA receives a large volume of FOIA requests every year, only a small portion of those requests seek a fee waiver. For example, in FY 2025, SSA processed 802 fee waiver requests.[8] In FY 2024, SSA processed 633 fee waiver requests.[9]

---

[4] *See* Agency Resources, *available at* Hearings, Appeals, and Litigation Law Manual, available at https://www.ssa.gov/OP_Home/hallex/hallex.html; and Hearings and Appeals, *available at* https://www.ssa.gov/appeals/DataSets/02_HO_Workload_Data.html.

[5] *See* FOIA Reading Room, available at https://www.ssa.gov/foia/readingroom.html.

[6] *See* SSA, Freedom of Information Act Annual Report, Fiscal Year 2025, pp. 9-11, *available at* https://www.ssa.gov/foia/annual_reports/2025/FY2025-%20FOIA%20Annual%20Report%20PDF%20Version.pdf.

[7] *See* SSA, Freedom of Information Act Annual Report, Fiscal Year 2024, p. 20, *available at* https://www.ssa.gov/foia/annual_reports/2024/FY2024-%20FOIA%20Annual%20Report%20Final.pdf.

[8] *See* SSA, Freedom of Information Act Annual Report, Fiscal Year 2025, p. 18, *available at* https://www.ssa.gov/foia/annual_reports/2025/FY2025-%20FOIA%20Annual%20Report%20PDF%20Version.pdf.

[9] *See* SSA, Freedom of Information Act Annual Report, Fiscal Year 2024, p. 16, *available at* https://www.ssa.gov/foia/annual_reports/2024/FY2024-%20FOIA%20Annual%20Report%20Final.pdf.

9. PDP is responsible for making determinations about FOIA requests, including fee decisions. After receipt of a FOIA request that reasonably describes the records requested, PDP assesses fees as appropriate, performs and coordinates searches for requested records, reviews any records found for responsiveness and exemptions; and issues a decision on the request. PDP is also responsible for responding to both FOIA and Privacy Act appeals.

## II. SSA's Independent Fee Charging Authority

10. PDP charges fees for processing non-programmatic records requests pursuant to its independent fee statute, Section 1106(c) of the Social Security Act (42 U.S.C. § 1306(c)), rather than the FOIA. This statute applies notwithstanding FOIA and authorizes SSA to charge the "full costs" for responding to any requests for information (including FOIA requests) that are not for a purpose directly related to the administration of SSA programs.

11. PDP likewise uses SSA's implementing regulations that authorize the recovery of the "full cost" of responding to requests that are "not directly related to the administration" of SSA programs. *See* 20 C.F.R. §§ 402.70(a)(1), 402.80(a) (formerly §§ 402.155, 402.175(a) (explaining in SSA's FOIA regulations the agency's authority to charge under its separate fee statute)).[10]

12. Because PDP relies on Section 1106(c) authority, when SSA determines a request is for a non-program purpose, the agency is authorized to recoup the full costs for providing that information, including the "direct and indirect costs" as set out in 20 C.F.R. § 402.80(a) (formerly 20 C.F.R. § 402.175(c)-(e)).

[10] SSA revised its regulations regarding Availability of Information and Records to the Public effective January 17, 2025. *See* Federal Register: Availability of Information and Records to the Public, *available at* https://www.federalregister.gov/documents/2024/12/18/2024-29647/availability-of-information-and-records-to-the-public. In connection with the revisions, SSA reorganized the regulations which caused them to be renumbered. Thus, I have attempted to cite both the current version of the regulation, and the prior version of the same, where relevant.

13. Program purpose is defined in the regulations as records that, for example, must be disclosed under the Social Security Act, or records that would be needed to pursue a benefit under a program that SSA administers. *See* 20 C.F.R. § 402.80(d) (formerly 20 C.F.R. § 402.170(a)). Only the FOIA Officer has the authority to make the program/non-program decision. *See* 20 C.F.R. § 402.80(e).

## III. SSA's Fee Waiver Regulation

14. SSA may waive or reduce any fees under 20 C.F.R. § 402.85 (formerly 20 C.F.R. § 402.185), an implementing regulation under 42 U.S.C. § 1306, if it finds that that disclosure:

- Is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government; and
- It is not primarily in the commercial interest of the requester.

15. Given SSA's statutory independent fee authority (42 U.S.C. § 1306(c)), permitting SSA to recover full costs under the Social Security Act, SSA does not grant fee waivers on nonprogram requests based on the FOIA's statutory fee waiver provisions. Instead, SSA charges and may elect to waive charges solely under 42 U.S.C. § 1306(c) and SSA's regulation at 20 C.F.R. 402.85, which explains when we will waive fees for public interest when we charge under § 1306(c). SSA made this clear when it responded to public comments on its 2024 rulemaking, which updated, reorganized, and clarified its FOIA processes for the public. *See* 89 Fed. Reg. 102,704, 102,708–09 (Dec. 18, 2024). Two commenters requested that SSA "ensure the application of the fee waiver provision is consistent with the FOIA statute." *Id.* SSA's response in the Federal Register explained that SSA:

> consistently follow[s] the statutory and our regulatory requirements to disclose records at no fee or a reduced fee. Because SSA charges fees when the request is not directly related to the administration of the Social Security Act based on our authority in section 1106(c) of the Social Security Act, which applies notwithstanding the FOIA provisions in 5 U.S.C. 552 and 552a, the *FOIA statutory fee*

> *provisions would not apply*. When a public interest fee waiver is sought, we will approve waiver when the criteria in our regulation at 20 CFR 402.85 (formerly 20 CFR 402.185) have been met; this aspect of our fee charging and waiver procedures has not changed in this final rule from our current regulations.

89 Fed. Reg. 102704-01, 102708-102709 (December 18, 2024) (emphasis added).

16. Both the current and former versions of the fee waiver regulation contain specific criteria for demonstrating the requisite public interest, including: "(i) how the records pertain to the Federal Government's operations or activities; (ii) whether disclosure would reveal any meaningful information about Government operations or activities not already known to the public; and (iii) whether the contribution to public understanding of those operations or activities would be significant." 20 C.F.R. § 402.85(b)(2)(i)-(iii) (formerly 20 C.F.R. § 402.185(b)). In the revised version of the regulation, the agency clarified that requesters "must be reasonably specific" in the waiver request "as to the specific Government operation or activity and provide direct, clear (not remote or attenuated) connections to the meaningful information" sought. *See* 20 C.F.R. § 402.85(b)(2)(iv). The regulation explains that "[g]eneralized interest in government programs is not reasonably specific to grant waiver." *Id*.

17. PDP considers fee waiver requests that are submitted at the same time as the records request, as required by the regulations. *See* 20 C.F.R. § 402.85(b)(1).

## IV. PDP's Process for Adjudicating Fee Waiver Requests

18. PDP tracks FOIA requests in FOIAXpress, a commercial case management system used across the federal government. FOIA requests are submitted online via SSA's FOIAXpress Public Access Link or are input by PDP analysts into FOIAXpress if sent via mail, email, or fax, and are then assigned to an analyst.

19. The assigned analyst then begins processing the request. Initial processing of a FOIA request includes the determination of whether the request is valid and reasonably describes

the records sought; making a determination about whether the request is program-related; preparing a fee notice, if applicable; and, as appropriate, performing a search for or otherwise tasking searches for potentially responsive records. For invalid requests, the agency will issue a substantive response on the FOIA request, without deciding any fee waiver requests.

20. When a fee waiver request is analyzed, the analyst applies the regulatory criteria contained in 20 C.F.R. § 402.85. The analyst considers the nature of the records requested and the justification provided by the requester, that is the FOIA requester's articulated rationale for a fee waiver for each record or set of records requested, to determine whether the regulatory criteria are met. At this early stage, PDP has generally not yet identified responsive records; so, the analyst does not consult the records themselves. However, if a request is highly technical or the responsive records could be limited or already public, the analyst may reach out to subject matter experts in another component for input on the subject matter and records availability. Analysts routinely consult colleagues, mentors, and the senior analysts when reviewing a fee waiver request. The analyst then prepares a recommendation in the form of a draft determination letter.

21. The draft determination letter then proceeds through successive steps of management review. The proposed determination letter is first reviewed by the Division Director. Once any feedback is resolved, the letter proceeds to the FOIA Officer. At each level, the respective PDP employee repeats the regulatory analysis, taking into consideration the request itself, the justification provided, and any prior correspondence or discussion about the FOIA request or fee waiver, within SSA or between PDP and the requester. PDP frequently seeks legal guidance from disclosure law attorneys within Law and Policy and considers that legal advice. The FOIA Officer may revise the draft or change the outcome where warranted.

The FOIA Officer makes the final decision. Once the FOIA Officer gives final approval, the analyst is notified and he or she issues the fee waiver determination letter to the requester.

22. Within the fee waiver determination letter, the requester is provided with notice of their appeal rights and instructions for submitting an appeal. *See* 20 C.F.R. §§ 402.85(b)(1), 402.105. If the requester submits a timely appeal, the review process begins again, and any additional justification provided with the appeal is considered. On appeal, the matter is assigned to a different analyst, who drafts the determination letter for the appeal, which then gets reviewed by a senior analyst. The Division Director and the FOIA Officer conduct their reviews as well before the recommendation goes to the Head of PDP, who is the final decision-maker on appeal. *See* 20 C.F.R. § 402.85(b)(1).

23. Our analysts are extensively mentored by the senior analysts, who are very experienced in all aspects of FOIA processing. The only factors the analysts are directed to consider are the regulations at 20 C.F.R. Part 402, and each fee waiver request is evaluated on its own merits. PDP does not impose quotas, nor does PDP impose or follow any policies or directives that are inconsistent with the regulatory criteria, including the regulatory criteria concerning fee waivers specifically, 20 C.F.R. § 402.85.

24. Determination letters are drafted in Microsoft Word from sample letters maintained by individual analysts that supply language such as the recitation of the legal standards, appeal instructions, and formatting. The analyst is responsible for modifying the letter and adding language as appropriate to tailor the response to the request at hand. PDP does not maintain a central repository of language to be included in determination letters, nor does PDP maintain any guidance or directives to deny fee waiver requests of any type or from any requester.

25. Even if a FOIA requester does not request a fee waiver or PDP denies the fee waiver request on initial determination or appeal, PDP often ultimately charges no fee, consistent with SSA's fee authorities. For example, SSA will not charge the requester if the cost to produce records is less than the cost of issuing a bill, *see* 20 C.F.R. § 402.80(b), may not charge if it makes records publicly available due to program needs or proactive disclosure obligations, or may not charge if SSA determines that all requested records are already publicly available. 20 C.F.R. § 402.45(b). PDP may publish the records without charge in the FOIA Reading Room, thereby making them available to the public at large, and issues a response to the requester mooting the fees and directing the requester to the public link. *See* FOIA Reading Room, *available at* https://www.ssa.gov/foia/readingroom.html (last visited August 21, 2026). For instance, in FY 2025, PDP published over 80 items. *See id.*

26. PDP does not process payment until the FOIA request is closed (i.e., when the FOIA Officer issues a decision on records release). *See* 20 C.F.R. § 402.90(b). Where PDP intends to charge a FOIA requester a fee, it issues a fee notice that estimates the fee that PDP will charge in connection with processing the request. *See* 20 C.F.R. § 402.90(a). The requester then has the opportunity to proceed with the FOIA request by providing payment information (although not charged at this time), asking the agency to search and process up to a specified charge, requesting to narrow the scope, or withdrawing the request.

27. Because many requests fall into the exceptions described in paragraph 25 above, in recent years SSA has collected only a small portion of the total costs associated with processing FOIA requests. For example, in FY 2020, SSA recovered just 5.82% of its total

FOIA processing costs; 13.15% in FY 2021, 6.9% in FY 2022, 8.23% in FY 2023, 16.86% in FY 2024, and 11.93% in FY 2025.[11]

## V. SSA's Fee Waiver Statistics

28. To comply with annual reporting obligations, PDP reports required statistics to the Department of Justice (DOJ), *see* 5 U.S.C. § 552(e)(1), and publishes on its website statistics and data about FOIA requests submitted to the agency including fee waiver statistics. For transparency purposes, the agency also maintains a FOIA page on the agency's official website that informs the public about the FOIA, how to submit a request to SSA, how to contact PDP with questions, and provides links to SSA FOIA data.[12]

29. The statistics contained in the DOJ FOIA Reports for FYs 2023, 2024, 2025 were obtained from reports run on FOIAXpress. The statistics contained in the DOJ FOIA Reports for FYs 2020, 2021, and 2022, were obtained from FOIAOnline, which is the program that PDP previously used to track FOIA requests. SSA transitioned from using FOIAOnline to FOIAXpress for case management in July 2023.

30. FOIAXpress offers only the following options to record the disposition of a fee waiver request: TBD, granted, denied, withdrawn, not billable, and N/A. There are no options in this field of FOIAXpress to distinguish between determinations made at the initial stage versus the appeal stage. The statistics contained in SSA's DOJ FOIA reports reflect only the number of fee waivers granted and the number denied at the initial stage; the fee waiver statistics do not reflect the agency's final determination on whether to charge fees.

---

[11] *See* FOIA Annual Reports, available at https://www.ssa.gov/foia/annualreports.html.

[12] *See* Freedom of Information Act (FOIA), available at https://www.ssa.gov/foia/.

31. The number of fee waiver requests SSA receives has increased significantly in recent years, largely due to requests by automated bots that provide no justification for the waiver request. For example, in FY 2024, the agency received over 400 fee waiver requests from automated bot requests. These bot submissions checked the fee waiver box in DOJ's National FOIA Portal but supplied no justification for a fee waiver. SSA is able to identify these submissions by the volume of sequentially received requests from the same requester with repetitive request language.

32. SSA's published statistics for the DOJ FOIA Reports, for initial decisions only, for FY 2008 through FY 2025, reflect the following:[13]

| **Fiscal Year** | **Fee Waivers Granted** | **Fee Waivers Denied** |
|---|---|---|
| 2008 | 38 | 52 |
| 2009 | 40 | 62 |
| 2010 | 0 | 7 |
| 2011 | 2 | 18 |
| 2012 | 3 | 11 |
| 2013 | 0 | 4 |
| 2014 | 0 | 4 |
| 2015 | 0 | 4 |
| 2016 | 0 | 2 |
| 2017 | 11 | 75 |
| 2018 | 13 | 126 |
| 2019 | 4 | 165 |
| 2020 | 0 | 194 |
| 2021 | 1 | 264 |
| 2022 | 1 | 331 |
| 2023 | 0 | 374 |
| 2024 | 8 | 625 |
| 2025 | 21 | 781 |

## VI. NYLAG's FOIA Fee Waiver Requests

### FOIA Request 1: SSA-2023-006957

[13] *See* FOIA Annual Reports, available at https://www.ssa.gov/foia/annualreports.html.

33. On April 4, 2023, NYLAG submitted a request seeking: 1) "All policies and procedures for processing, adjudicating, granting, or denying FOIA fee waiver requests"; and 2) "Copies of all communications granting FOIA fee waivers on or after October 1, 2019." ECF No. 22, NYLAG's amended complaint ("Amended Complaint" or "Am. Compl."), Ex. 1A ("Request 1"). Plaintiff also requested a fee waiver. *Id*. at pp. 2-5.

34. PDP determined that this request was not made for a program purpose and therefore, under § 1306, SSA could charge the full cost for processing the request. PDP denied the fee waiver request in a letter issued to NYLAG on May 1, 2023. *See* Am. Compl., Ex. 1B. The letter stated that the request did not explain with reasonable specificity how the regulatory criteria were met. *See id*. The letter explained that "[t]he public currently has access to the regulation and policy governing SSA FOIA fee waivers" and that NYLAG had "not explained with reasonable specificity how disclosure of the requested information will enhance the information on FOIA fee waivers that the agency already posts publicly." *Id*. That rationale tracked two of the four regulatory criteria: 20 C.F.R. § 402.185(b)(2), whether disclosure would reveal meaningful information "not already public knowledge," and § 402.185(b)(4), which asks whether the contribution to public understanding "be[] a significant one." In sum, PDP determined that public availability of the regulation and policy governing SSA FOIA fee waivers undercut Plaintiff's fee waiver request.

35. On May 9, 2023, NYLAG appealed the fee waiver denial. Am. Compl., Ex. 1C. PDP did not adjudicate the appeal of the fee waiver denial prior to Plaintiff filing this action.

36. In response to item 1 of the request, PDP identified SSA policies and procedures for processing, adjudicating, granting, or denying FOIA fee waiver requests that are available on

SSA's public-facing website at https://secure.ssa.gov/apps10/poms.nsf/lnx/0203311005 and 20 C.F.R. § 402.185.

37. In response to item 2 of the request, PDP identified seven responsive records, which were produced to Plaintiff at no cost in January 2024.

**FOIA Request 2: SSA-2023-006956**

38. On April 4, 2023, NYLAG submitted a FOIA request to SSA that was assigned number SSA-2023-006596. Am. Compl., Ex. 2A ("Request 2"). This FOIA request sought six categories of records, with additional subparts. *See id*. NYLAG explained the FOIA request pertained to SSA's "potential future information exchange with a payroll data provider," which "SSA has not yet implemented," and "will likely include regulations regarding . . . in a future [Notice of Proposed Rulemaking (NPRM)]." *Id.* at p. 3. In relation to such "potential information exchange," Plaintiff sought:

> Item 1: Contracts and/or agreements between the SSA and Equifax providing for information exchange of payroll data;
>
> Item 2: All SSA guidance, policies, and procedures relating to SSA's actual or proposed use of payroll data from Equifax, including, but not limited to:
>
> a) policies for SSA's independent verification of data obtained through information exchange;
>
> b) SSA's policies for notice to beneficiaries prior to any reduction or termination of benefits after a review of Equifax payroll data, including any policies regarding the disclosure of the use of an Equifax report or the consumer's right to obtain a copy of their Equifax report;
>
> c) SSA's policies for any appeals process available to beneficiaries in challenging reduction or termination of benefits after a review of Equifax payroll data;
>
> d) SSA's policies for compliance with the Fair Credit Reporting Act with respect to its use of Equifax's payroll data; and

e) the beneficiary's authorization and revocation of SSA's access to wage and employment information from Equifax.

Item 3: All other document(s) relating to the proposed information exchange between SSA and Equifax, including, but not limited to:

a) any document(s) describing the Equifax payroll database, including all sources of the Equifax's payroll data; and

b) "technical specifications, characteristics, and needs" provided by the SSA to Equifax, including, but not limited to, "detailed requirements and pertinent information regarding the request, response, security requirements, Web Service, data retention, and processing guidelines related to the information exchange," 86 Fed. Reg. 5303.

Item 4: All document(s) relating to assessment of the accuracy of Equifax's data, including, but not limited to:

a) Equifax's "regularly conduct[ed] quality assurance assessments to ensure accuracy" of data of employers, 86 Fed. Reg. 5303; and

b) Any information in SSA's possession regarding Equifax's use of "reasonable procedures to ensure maximum accuracy, relevance, and timeliness of its wage and employment information," 86 Fed. Reg. 5303.

Item 5: All assessments, studies, and/or cost-benefit analyses conducted regarding the SSA's use of Equifax as a payroll data provider, including the consideration of alternative payroll data providers; and

Item 6: Documents relating to access to SSA data by Equifax.

*Id*. at p. 2.

39. Plaintiff requested a fee waiver, which was phrased similarly, and in many places verbatim, to NYLAG's fee waiver request in FOIA Request 1, particularly in the section explaining, "The Information Will Contribute to the Public's Understanding, and NYLAG Will Effectively Disseminate This Information." Request 2, at pp. 3-7. Plaintiff did explain more specifically that information "related to the accuracy of the Equifax data matching process,"

associated "accuracy safeguards," and "testing of accuracy" would help the public understand SSA's use of Equifax in a proposed information exchange. Request 2 at pp. 3, 5.

40. PDP determined that this request was not made for a program purpose and therefore, under § 1306, SSA could charge the full cost for responding to the request.

41. On July 26, 2023, PDP partially granted the fee waiver request. Am. Compl., Ex. 2B, p. 1. PDP explained:

> Within your 'Request for Waiver of Fees' document, you sufficiently addressed how the information requested under item 4 [records relating to assessment of the accuracy of Equifax's data] meets our regulatory criteria [for fee waivers]; therefore, I will grant a fee waiver for item 4. Concerning items 1, 2, 3, 5, and 6, your fee waiver request fails to explain with reasonable specificity how the disclosure of the information you requested will meet the above factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors.

*Id*. at p. 2.

42. On July 28, 2023, Plaintiff appealed the partial fee waiver denial. Am. Compl., Ex. 2C. The next day, the migration from FOIAOnline to FOIAXpress migration took place. Before PDP could issue a decision on the fee waiver appeal, Plaintiff filed the instant lawsuit.

43. Leading up to and through this lawsuit, PDP continued to process Plaintiff's FOIA request, with the following outcomes:

Item 1: PDP conducted a search, located one responsive record, a contract with attachments, and produced it without charge.

Item 2: PDP conducted a search, and without charge informed Plaintiff of the following responsive, publicly available records:

- Agency Information Collection Activities: Proposed Request, 82 Fed. Reg. 13913 (Mar. 15, 2017)
- Use of Electronic Payroll Data to Improve Program Administration, 86 Fed. Reg. 5303 (Jan. 19, 2021)

- POMS GN 00204.150, Authorization to Obtain Wage and Employment Information from Payroll Data Providers via an Information Exchange for the Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) Programs, https://secure.ssa.gov/poms.nsf/lnx/0200204150

- POMS DI 13010.185, Due Process in Work Issue Cases, https://secure.ssa.gov/poms.nsf/lnx/0413010185

- POMS DI 13010.215, Procedure for Extended Period of Eligibility (EPE), https://secure.ssa.gov/poms.nsf/lnx/0413010215

- POMS DI 13010.025, Field Office (FO) Responsibilities in Work Continuing Disability Reviews (CDRs), https://secure.ssa.gov/poms.nsf/lnx/0413010025

- POMS SI 00820.130, Evidence of Wages or Termination of Wages, https://secure.ssa.gov/poms.nsf/lnx/0500820130

- POMS SI 00820.135, Wage Verification and Reported Wages Over $65 per Month, https://secure.ssa.gov/poms.nsf/lnx/0500820135

- POMS GN 03102.000, Reconsideration (Title II and Entitlement Under Title XVIII) -Table of Contents, https://secure.ssa.gov/apps10/poms.nsf/lnx/0203102000

- POMS SI 04020.000, Reconsideration - SSI - Table of Contents, https://secure.ssa.gov/apps10/poms.nsf/lnx/0504020000

- POMS GN 03103.000, Hearings (Title II and Entitlement Under Title XVIII) - Table of Contents, https://secure.ssa.gov/apps10/poms.nsf/lnx/0203103000

- POMS SI 04030.000, Administrative Law Judge (ALJ) Hearings - SSI - Table of Contents, https://secure.ssa.gov/apps10/poms.nsf/lnx/0504030000

- POMS GN 03104.000, Appeals Council Review (Title II and Entitlement Under Title XVIII) - Table of Contents, https://secure.ssa.gov/apps10/poms.nsf/lnx/0203104000

- POMS SI 04040.000, Appeals Council (AC) Review - SSI - Table of Contents, https://secure.ssa.gov/apps10/poms.nsf/lnx/0504040000

- "Your Right to Question the Decision Made on Your Claim," https://www.ssa.gov/pubs/EN-05-10058.pdf

- POMS SI 04020.010, What Is Supplemental Security Income (SSI) Reconsideration, https://secure.ssa.gov/apps10/poms.nsf/lnx/0504020010
- EM-21064 REV, Goldberg Kelly Payment Continuation Period, https://secure.ssa.gov/apps10/reference.nsf/links/10292021100254AM
- EM-23001, New Authorization Requirement for The Work Number and Verify Advantage, https://secure.ssa.gov/apps10/reference.nsf/links/01112023022818PM

PDP also stated SSA would be publishing much of the information in the listed sub-bullet points in Plaintiff's request in an upcoming Federal Register issuance. Not only was responsive information publicly available, as listed above, but Plaintiff did not otherwise sufficiently articulate a justification for a fee waiver for this request under 20 C.F.R. § 402.185, given the breadth of its request as phrased and the fact that an information exchange had not yet been implemented.

Item 3: PDP told NYLAG this request was overbroad and invalid as the request for "[a]ll other document(s) relating to the proposed information exchange . . . including, but not limited to . . . " essentially implicated a limitless scope of nearly a decade's worth of records tied to an information exchange originating in legislation dating back to 2015. Because of the invalid nature of this request, the agency affirmed its fee waiver denial, finding that to the extent this item intended to seek records beyond what had been produced in response to Requests 1 and 2, Plaintiff did not sufficiently articulate a justification for a fee waiver for this request under 20 C.F.R. § 402.185, particularly given the breadth of its request as phrased.

Item 4: PDP conducted a search, identified one responsive record, and produced the resulting Proposed Information Exchange Accuracy Report at no cost.

Item 5: PDP conducted a search and located five records, which were produced to NYLAG during the course of the litigation at no cost.

Item 6: PDP conducted a search and identified only the contract produced in response to Item 1.

44. Accordingly, PDP produced all responsive records for Request 2 during the course of this litigation and did not charge NYLAG anything in connection with Request 2.

**FOIA Request 4: 2024-FOIA-00387**

45. On December 5, 2023, NYLAG submitted a FOIA request seeking: (1) a copy of POMS section GN 00203.011, titled "Special Interviewing Situations: Limited English Proficiency (LEP) or Language Assistance Required; (2) a copy of Standard Hearings Operations Procedure (SHOP) used by staff of SSA's Office of Hearings Operations; and (3) a list or directory of all direct telephone numbers for SSA field offices. Am. Compl., Ex. 4A ("Request 4"). NYLAG also requested a fee waiver. *Id*. at pp. 2-5. In its request for a fee waiver, NYLAG asserted that the SHOP "provides instructions to OHO staff, who make crucial determinations in SSA beneficiaries' cases," and that there is "limited public information on the specific training and guidance" those staff receive. *Id*. at 3.

46. PDP determined that this request was not made for a program purpose and therefore, under § 1306, SSA could charge the full cost for responding to the request.

47. PDP partially granted the fee waiver request on December 19, 2023. Am. Compl., Ex. 4B, p. 1-2. PDP explained:

> Within your request for a fee waiver, you sufficiently addressed how the information requested under item #1 meets our regulatory criteria; therefore, I will grant a fee waiver for item #1. Regarding requested item #3, your request for a fee waiver is moot, as the agency publicly provides a directory of all currently applicable FO internal numbers nationwide on the agency's Open Government Initiative website: https://www.ssa.gov/open/data/FO-RS-Address-Open-Close-Time-App-Devs.htlm.

> Concerning item 2, your fee waiver request fails to explain with reasonable specificity how the disclosure of the information you requested will meet the above factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors.

*Id*.

48. On February 7, 2024, Plaintiff appealed the partial fee waiver denial. Am. Compl., Ex. 4C. Plaintiff added Request 4 to this lawsuit as part of the Amended Complaint before SSA issued a decision on the appeal.

49. On May 31, 2024, PDP issued a response enclosing the responsive record for item 1 at no cost, restating the website for the field office directory for item 3, and including a fee notice for item 2. *See* ECF No. 100-8, Declaration of Kate Fetrow, dated June 15, 2026 ("Fetrow Decl.") at Ex. H. The notice stated that "we are charging you fees for your request for item #2 under section 1106(c) of the Social Security Act (Act)," and included an estimated cost of $771, "which included 18 hours of search and review time at $33.00 per hour and 3 hours of search and review time at $59.00 per hour." *Id*. at p. 3. Those inputs were derived by canvassing the components likely to hold responsive records and obtaining for each the estimated search time and the GS grade of the employee who would perform the search. NYLAG paid the fee of $771 and SSA produced the records responsive to item 2.

**FOIA Request 5: 2024-FOIA-00391**

50. On December 6, 2023, NYLAG submitted a FOIA request seeking: (1) manuals, handbooks, or guidance provided to consultative examiners, medical experts, and vocational experts "outside of what is currently available in" the publicly available Consultative Examination Guide (the "Greenbook"), the Medical Expert Handbook, and the Vocational Expert Handbook; (2) policy and guidance records concerning diagnoses, consultative

examinations, medical source statements; and (3) "a copy of the report on best practices created by the SSA regarding the [consultative examination] oversight meeting with state agencies held in spring of 2023." Am. Compl., Ex. 5A ("Request 5"). NYLAG also requested a fee waiver. *Id*. at pp. 2-5. NYLAG asserted that the records sought by the request would contribute to public understanding of government operations, particularly, SSA's policies for handling certain medical conditions that are not well understood by the public. *See id*.

51. PDP determined that this request was not made for a program purpose and therefore, under § 1306, SSA could charge the full cost for responding to the request.

52. On December 22, 2023, PDP denied the fee waiver request, determining that the request "fail[ed] to explain with reasonable specificity how the disclosure of the information...requested will meet the [public interest] factors." Am. Compl., Ex. 5B. NYLAG submitted an appeal on February 7, 2024, re-asserting that "record sought will contribute considerably to public understanding," and "will serve no commercial interests." Am. Compl., Ex. 5C.

53. On May 31, 2024, PDP issued a determination on the appeal, affirming the denial for items 1 and 2 due to lack of sufficient justification, but granting waiver for item 3. Fetrow Decl. Ex. L (ECF No. 100-12). The letter stated:

> [W]e are charging you fees for your request under section 1106(c) of the Social Security Act (Act) (42 U.S.C. § 1306(c)). We have invoked section 1106(c) and because of that the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request. Section 1106(c) applies notwithstanding FOIA and provides that we charge the full cost for search and reproduction of records when the request is for a purpose not directly related to the administration of a program under the Act. (20 C.F.R. § 402.175(a)). We determined that your request is not directly related to the administration of the Act. Accordingly, we will charge you for the full cost to provide the requested information (42 U.S.C. § 1306(c); 20 C.F.R. § 402.175(a)).

*Id*. at p. 2.

54. The letter also notified NYLAG that the estimated cost for producing records responsive to items 1 and 2 of the request was $1,067, which included 22.50 hours of search and review time at $33.00 per hour and 5.50 hours of search and review time at $59.00 per hour. *Id*. The notice further explained that if the requester wanted SSA to proceed with the request for requests #1 and #2, it must let SSA know within 10 business days from the date of the letter and that the requester could also narrow the scope of the request or set a limit on the amount it was willing to spend. *Id*. NYLAG paid the estimated fee of $1,067, and SSA produced all responsive records.

**FOIA Request 6: 2024-FOIA-00397**

55. On December 7, 2023, NYLAG submitted a request seeking aggregate statistical data concerning age-18 benefit redeterminations and requested a fee waiver. Am. Compl., Ex. 6A ("Request 6").

56. PDP determined that this request was not made for a program purpose and therefore, under § 1306, SSA could charge the full cost for responding to the request.

57. On December 21, 2023, PDP issued a determination denying the fee waiver, finding that the request failed to explain with reasonable specificity how disclosure of the requested information would meet the public interest factors. Am. Compl., Ex. 6B. NYLAG appealed the denial on February 7, 2024. Am. Compl., Ex. 6C. But NYLAG added Request 6 to this action as part of the Amended Complaint before SSA issued a decision on the appeal. On May 31, 2024, PDP notified NYLAG that SSA had conducted a search and had no records responsive to the request. SSA did not charge NYLAG for this request.

## VII. NYLAG Requests Submitted Prior to Litigation

58. PDP was able to identify ten FOIA requests submitted to SSA by NYLAG from around the time period leading up to the filing of this action in October 2023. The following table depicts PDP's handling of those FOIA requests, including whether a fee waiver was requested; the agency's determination on the fee waiver request; whether the agency charged and collected a fee; and whether records or another substantive response was provided to the FOIA request.

| **Case Number (Chronological Order)** | **Fee Waiver Requested?** | **Fee Waiver Granted?** | **Fee Charged/ Collected?** | **Records Provided or Other Substantive Response?** |
|---|---|---|---|---|
| SSA-2020-000947 | Yes | No | Yes/Yes ($132) | Yes – records provided |
| SSA-2021-002218 | Yes | No | No/No | Yes – no responsive records |
| SSA-2022-009394 | Yes | No (but advised no fee would be assessed) | No/No | Yes – records provided |
| SSA-2022-011316 | Yes | No (but advised no fee would be assessed) | No/No | Yes – records provided |
| SSA-2022-013899 | Yes | No | Yes/No | N/A (Plaintiff did not respond to fee notice or follow-up correspondence) |

| | | | | |
|---|---|---|---|---|
| SSA-2023-000227 | Yes | N/A (advised no fee would be assessed) | No/No | Yes – information provided at no cost |
| SSA-2023-005094 | Yes | No (advised no fee would be assessed) | No/No | Yes –records provided |
| SSA-2023-005589 | Yes | No | No/No | Yes – records provided |
| SSA-2023-006759 | No | N/A (fee waiver not requested) | No/No | Yes – records provided |
| SSA-2023-011647 | Yes | Moot | No/No | Yes – link to publicly available record provided at no cost |

59. As reflected in the chart, NYLAG submitted a fee waiver request with nine of the ten requests (all but SSA-2023-006759). In response to five (SSA-2022-009394, SSA-2022-011316, SSA-2023-000227, SSA-2023-005094, and SSA-2023-011647) of the nine fee waiver requests, SSA stated that no fee would be assessed in connection with the FOIA request and produced the responsive records.

60. For an additional two of the FOIA requests (SSA-2021-002218 and SSA-2023-005589), SSA responded to the FOIA request (either by producing the responsive records or notifying NYLAG that no such records existed) and did not charge NYLAG any fee.

61. For the one request for which NYLAG did not request a fee waiver (SSA-2023-006759), SSA similarly responded to the FOIA request without charging NYLAG anything.

62. For the remaining two FOIA requests, SSA notified NYLAG that it would charge a fee and issued a fee notice. In one of those two cases (SSA-2022-013899), NYLAG did not

respond to the fee notice or follow up correspondence, so PDP administratively closed the request. In the other case (SSA-2020-000947), NYLAG paid $132 and SSA produced the records.

## VIII. Subsequently Submitted NYLAG Requests

63. I understand that in connection with its own summary judgment motion, NYLAG identified additional FOIA requests it has submitted to SSA during the pendency of this lawsuit. *See* ECF No. 95, Declaration of Michelle Spadafore, dated June 15, 2026, ¶ 22.[14] The following table depicts PDP's handling of those FOIA requests, including whether a fee waiver was requested; the agency's determination on the fee waiver request; whether the agency ultimately charged and collected a fee; and whether records or another substantive response was provided to the FOIA request.

| **Case Number (Chronological Order)** | **Fee Waiver Requested?** | **Fee Waiver Granted?** | **Was a Fee Charged/ Collected?** | **Records Provided or Other Substantive Response?** |
|---|---|---|---|---|
| 2024-FOIA-00998 | No | N/A | No/No | Yes – record provided |
| 2024-FOIA-01252 | Yes | Mooted | No/No | Yes – links to publicly available records provided |

[14] Paragraph 22 of the Declaration of Michelle Spadafore states that NYLAG submitted a total of 11 FOIA requests to the SSA during the pendency of this litigation, seven of which sought fee waivers and four of which did not. However, two of the FOIA requests Ms. Spadafore identifies were submitted to the agency prior to the filing of this action in October 2023 (SSA-2023-006759 was submitted in March 2023 and SSA-2023-011647 was submitted in July 2023). Thus, the disposition of those requests is described in the preceding section, which contains information about FOIA requests that NYLAG submitted prior to this litigation.

| | | | | |
|---|---|---|---|---|
| 2024-FOIA-01324 | No | N/A | No/No | Yes – information provided |
| 2024-FOIA-01325 | Yes | Mooted | No/No | Yes – record provided |
| 2025-FOIA-00211 | No | N/A | No/No | Yes – information provided |
| 2025-FOIA-01544 | Yes | No/No Appeal | Pending | Pending |
| 2025-FOIA-01885 | Yes | Moot | No/No | Yes –records provided |
| 2025-FOIA-02443 | Yes | Moot | No/No | Yes – record provided |
| 2025-FOIA-02465 | Yes | Moot | No/No | Yes – record provided |

64. Of these nine FOIA requests that NYLAG has submitted to SSA, it requested fee waivers in six and did not request fee waivers in three.

65. For the three requests for which NYLAG did not submit a fee waiver request (2024-FOIA-00998, 2024-FOIA-01324, 2025-FOIA-00211), SSA responded in full to the FOIA requests, either by providing records or information, without charging NYLAG fees.

66. For five of the six requests for which NYLAG did request a fee waiver (2024-FOIA-01252, 2024-FOIA-01325, 2025-FOIA-01885, 2025-FOIA-02443, and 2025-FOIA-02465), SSA similarly provided a substantive response, either by providing the requested records, links to publicly available records, or information, without charging NYLAG fees.

67. There is only one request in this set (2025-FOIA-01544) for which SSA has denied the fee waiver and, therefore, has not further processed the request. NYLAG has appealed the determination on the fee waiver request and the appeal is currently pending.

68. Thus, of the 24 FOIA requests submitted to SSA by NYLAG in the years preceding this litigation, at issue in this litigation, and submitted since the filing of the original complaint but not at issue in this lawsuit: one remains pending, one was administratively closed for failure to respond to the fee notice, and NYLAG received responsive records for the remaining 22 requests, paying for only one request in full and two requests in part.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 27, 2026
New York, New York

Jennifer Karangelen
Digitally signed by Jennifer Karangelen
Date: 2026.08.27 15:38:57 -04'00'

Jennifer Karangelen
Acting FOIA and Privacy Officer
Privacy and Disclosure Policy
Law and Policy